## Ham, By Her Guardian v. Hord.

(Decided October 15, 1920.)

### Appeal from Mason Circuit Court.

1. Trial—Peremptory Instruction.—A peremptory instruction should not be given to the jury where there is a conflict in the testimony and reasonable minds might honestly differ as to the truth or falsity of conclusions and deductions to be drawn therefrom.

2. Appeal and Error—Verdict—Evidence.—Where three witnesses for plaintiff testified to facts supporting her cause of action and five or six witnesses contradict her testimony and that of her witnesses, a verdict for defendant can not be said to be flagrantly against the weight of the evidence.

3. Negligence—Contributory Negligence.—Neither the doctrine of imputed negligence nor the doctrine of sudden emergency has any application under the facts in this case since plaintiff was guilty of the contributory negligence complained of, if any, and there was no emergency under which plaintiff acted, or, if any, it was not produced or brought about by any act of defendant.

4. Highways—Use of Motor ' Vehicles—Contributory Negligence.—
   Plaintiff was fifteen years and one month old at the time she re-
   ceived the injuries from a collision with an automobile on a public
   highway and for which she sued. Held, that under the facts as re-
   cited in the opinion the court properly submitted the issue of
   contributory negligence to the jury and properly said to the jury
   that ordinary care was that "which is usually exercised under the
   same or similar circumstances by persons of her age, intelligence
   and discretion to protect themselves from injury."

J. M. COLLINS for appellant.

ALLAN D. COLE, STANLEY F. REED and WORTHINGTON,
COCHRAN, BROWNING & REED for appellee.

Opinion of the Court by Judge Thomas—Affirming.

On the night of July 14, 1917, at about 12 o'clock
the appellant and plaintiff below, Illia Mae Ham, who was
an infant fifteen years and one month of age, was struck
by an automobile belonging to and driven by the appel-
lee and defendant below, Dr. Winn Hord. The accident
occurred on the Flemingsburg pike some three or four
miles from Maysville, Ky. To recover damages sustained
because of her injuries, plaintiff by her statutory
guardian filed this suit, alleging in her petition that de-
fendant was "carelessly, negligently and recklessly driv-
ing and propelling his automobile along and over said
pike at a rapid and dangerous rate of speed," and that
"the defendant operated his machine with such speed and
force and so negligently, carelessly and recklessly and
with such gross and wanton disregard of the predica-
ment of said Illia Mae Ham, that he struck her," etc., and
judgment for ten thousand ($10,000.00) dollars was
sought. The answer contained a denial of the averments
of the petition as to the negligence of defendant and a
plea of contributory negligence on the part of plaintiff,
which being denied, formed the issues. A trial resulted
in a verdict and judgment in favor of defendant which
plaintiff seeks to reverse by this appeal.

Counsel for plaintiff on this appeal states and argues
in his brief four reasons why the judgment should be re-
versed, each of which, as he contends, is sufficient for that
purpose. They are (1) that a peremptory instruction
direeting a verdict for plaintiff and which was offered by
her counsel should have been given to the jury; (2) that
the defense of contributory negligence is not available in
this case and it should have been stricken from the an-

swer and no instruction submitting it to the jury should have been given; (3) that the verdict is flagrantly and palpably against the weight of the evidence, and (4) because the court erred to plaintiff's prejudice, in the use of an expression in instruction number 1 hereafter to be noticed.

A disposition of the questions raised requires a brief statement of the testimony concerning the happening of the accident. Plaintiff, her father and mother were in a buggy going south and slightly upgrade at a point where the pike was between thirty and thirty-five feet wide. Some two hundred and fifty or three hundred feet in front of them was a curve in the pike and plaintiff's father discovered the reflection of the light of defendant's automobile around the curve and his horse being a little nervous, he drove to the extreme right or western edge of the pike and stopped. He immediately got out and went to his horse's head and in the meantime the automobile had come from around the curve. The mother got out of the buggy and went to its rear, and according to the testimony of plaintiff and that of her father and her mother, she got out of the buggy and attempted to follow her mother to the rear of the buggy, but just as she went to make the turn to get behind the buggy, defendant's machine struck her and dragged her about forty feet, inflicting upon her the injuries of which she complains. Her left leg and left collar bone were broken and she was carried to Maysville, where she received surgical attention and was afterwards treated in a hospital there and subsequently treated in a hospital in Cincinnati, all at the expense of defendant. There is nothing to show or is there an intimation to the effect that defendant was guilty of negligence producing the nervous or frightened condition of the horse hitched to the buggy in which plaintiff was riding. On the contrary, it is shown by the father of plaintiff that such condition was produced by the reflection from the lights on the machine around the curve and perhaps by the noise it was making before defendant came in sight. While plaintiff and her witnesses do not claim to be experts as to the speed of automobiles, they were permitted to state that defendant was running his machine at a speed of at least twenty miles per hour. At this point, we might say that if the jury had believed and accepted as true the testimony of plaintiff and her witnesses, a clear case of negligence on the part of defendant was established. Defendant had in his machine a young lady companion, and it is

in proof that three other machines, traveling in the same direction as was the buggy in which defendant was riding, appeared upon the scene at about the time the accident happened or at any rate before any one could get to plaintiff where she was lying in the pike. Defendant and his companion state in substance that when they rounded the curve traveling at about twenty miles per hour they saw two objects in the pike which they soon learned were individuals and saw the buggy on the west side of the pike but did not observe any frightened condition of the horse; that the two persons immediately went towards the buggy; that the automobile was under complete control and was slowed down to a speed of about eight miles per hour, and when at least two feet away from the buggy the plaintiff, being immediately next to the horse and at about its hips, made a sudden start to go across the pike and got in front of the machine and was struck before it could be stopped. They furthermore testified that the machine passed beyond the buggy only a few feet. This statement of the facts as to how the accident happened is sustained by the testimony of a number of other persons, who were in the three other machines that arrived at about the time of the accident. Those witnesses said that the body of plaintiff as well as the defendant's machine was out in the pike a considerable distance from the buggy and that she was lying only a short distance beyond the buggy and had been dragged only a few feet. It is further shown that plaintiff on perhaps two occasions after the accident stated that it was due to her fault in trying to cross the pike in front of the defendant's automobile. Other witnesses testified that plaintiff's mother, shortly after the accident and while on the way to Maysville to see a doctor, said to plaintiff: "What made you run out there?" It will thus be seen that the evidence as to how the accident happened is sharply contradictory, with hte greater number of witnesses sustaining defendant's contention. Under such circumstances it would be a waste of time to further consider ground (1) urged for a reversal, since no rule of practice is more firmly fixed in this jurisdiction than the one that where the evidence is contradictory or where reasonable men might draw different conclusions, it is the duty of the court to submit the issue to the jury and to not direct it as to the verdict that should be returned.

Ground (2) relied on is equally untenable. In support of it counsel argues (a) that if there was any contributory negligence shown (which is denied) it was that

of the father who was driving the horse, and that under the doctrine of Cahill v. Cincinnati, etc., Railway Co., 92 Ky. 345, and a number of others from this court decided both before and since that case, his negligence can not be imputed to the plaintiff under the facts of this case. But in answer to this we need not consider whether the doctrine of those cases is applicable here, since the contributory negligence relied on by the defendant and testified to by him and a number of his witnesses was the negligence of the plaintiff and not that of her father. Such negligence consisted in plaintiff running from the buggy across the pike at the time she was struck. It is further insisted in support of this ground that, (b) what is known as "The Sudden Emergency" doctrine deprives defendant of the benefit of this defense, and a number of cases are cited wherein a litigant is relieved from the consequences of his action taken in a sudden emergency brought about and produced by the negligence of his adversary, a doctrine which in all of its details is thoroughly familiar to the legal profession. But we fail to find any room for its application under the facts of this case. In the first place, we fail to find from any of the testimony wherein plaintiff was placed in any emergency, but if otherwise, no act of defendant contributed to the creation of any such emergency. The facts in the case of Shaver v. Smith, 179 Ky. 226, extensively quoted from and relied on by counsel, are so radically different from those in this case that what was said in that opinion can shed no light and furnish no guide for the court under the facts presented here. In that case plaintiff was riding on a wagon at the invitation of another and an automobile going in the same direction ran into the rear of it and, knocked plaintiff to the ground, whereby he sustained his injuries. There was no fact proven in that case which tended in the slightest degre to convict plaintiff of contributory negligence, and the court held that that plea was eliminated from the case. It is quite different here if the testimony of defendant and his witnesses is to be given any credence whatever. Neither can the youthful age of plaintiff excuse her from the effects of her contributory negligence if she was guilty of it. Her age and experience are facts to be considered by the jury in determing whether or not what she did on the occasion of the accident constituted contributory negligence, and the jury was so told in instruction number 3 in which this defense was submitted to it.

From what has been said it is clear that the verdict cannot be considered as flagrantly against the weight of the evidence as is insisted in ground (3) urged for a reversal.

In instruction number 1, which the court gave to the jury, the duty of the defendant and the care required of him in handling and operating his automobile on the public highway were defined in language of which there is no complaint and which in substance is the same submitted by plaintiff's attorney in an instruction offered by him, and the court then uses this expression "and to use every reasonable precaution to prevent frightening the horse harnessed to the buggy carrying plaintiff," etc.

In ground (4) it is earnestly insisted that this language was misleading and highly prejudicial to plaintiff's cause. But the argument of counsel has failed to convince us of the correctness of his position. If it should be admitted that the frightened condition of the horse, if it was frightened, was in no wise produced by any negligent act of defendant and that it in no way contributed to plaintiff's injury, the language complained of would be mere surplusage and would not in the remotest degree divert the minds of the jury from the real issue, i. e., the care which defendant should exercise while operating his automobile on the public highway. The court told the jury that it was his duty to keep a lookout ahead for persons and vehicles upon the road and to exercise ordinary care to prevent injury to any one and to keep his automobile under control and if he discovered any one in danger to reduce its speed and if necessary to bring it to a stop. We can not believe under the wording of this instruction that the jury was misled by the language complained of to the prejudice of plaintiff, even if we should admit that it was improperly inserted.

As stated in a former part of this opinion, plaintiff was quite seriously hurt and if the accident occurred in the manner testified to by her and her witnesses, her injuries were negligently inflicted. The testimony of defendant and his witnesses sharply contradicted that of the plaintiff and the case is one where the verdict for either side would have been supported by sufficient testimony. Under such circumstances it is not our province to disturb the verdict unless the record discloses some error prejudicial to the substnatial rights of the appellant.

After a careful consideration of the entire record we find no such error and the judgment is therefore affirmed.