## Prudential Insurance Company of America v. Hodge's Administratrix.

(Decided December 10, 1929.)

A. E. STRICKLETT for appellant.

C. B. SHIMER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On the 13th day of December, 1927, Guy Hodge made application to the appellant for a nonmedical industrial policy on his life in the sum of $1,000. On the 19th day of December following a policy was delivered to him. On the 29th day of December he made application to the General Hospital in Cincinnati for admission to that institution for treatment. He went from that institution to Arizona, where he died of tuberculosis on June 21, 1928. His personal representative instituted a suit on the policy. The company defended on the ground

that a fraud was practiced on it by Hodge in the answers made by him to certain questions in the application which did not disclose the true condition of his health at the time, and on the further ground that the applicant was not in sound health at the time the policy was delivered to him. There was a judgment in favor of appellee.

Hodge stated, in his application, in response to one of the questions, that his health was good at the time. He also answered that he had no physical defect or deformity, and in answer to another question he answered that he had never suffered from consumption, spitting of blood, habitual coughing, or from a number of other diseases mentioned in the question. The answer alleged that the answers to the questions were false and untrue, in that at the time the questions were answered Hodge was afflicted with consumption and spitting of blood, and that the answers were false and fraudulently made for the purpose of obtaining insurance, and were made by him as an inducement to the company to issue the policy, and that the answers and statements were relied on by the company as true when the policy was issued.

There was a paragraph in the policy in this language, to wit:

"This policy shall not take effect if the insured die before the date thereof, or if on such date the insured be not in sound health, but in either event the premiums paid thereon, if any, shall be returned."

The answer relied on this provision of the policy to defeat recovery on the ground that Hodge was not in sound health at the time the policy was issued. A return of the premium was offered

The evidence may be briefly summarized. The agent who took the application testified that the answers therein were made by the applicant, and that the applicant said nothing about having lost weight during the preceding nine months, or about spitting blood, or having consumption or any lung trouble. He stated that he discovered nothing in the appearance of Hodge which would indicate that he was so suffering, and that he would not have solicited the insurance if he had known the truth. He was direct and certain in his statement that, if he had known that the applicant had spit blood in March, 1927, or had lost about 50 pounds in weight

prior to the date of the application, he would not have taken the application, or have recommended the risk.

The superintendent in charge of the company's business at Covington testified fully as to the method of issuing nonmedical policies. Such policies are issued, according to his testimony, solely upon the statement of the applicant and the certificate of the agent that the applicant is in sound health as he appeared to him. The recommendation is subject to the approval of the company. He stated that the company would not have issued the policy if the answers made by the applicant had disclosed the true condition of his health.

Dr. Ryan, in response to a hypothetical question, gave it as his opinion that Hodge was not in sound health on the 19th day of December, 1927, and that he was suffering from pulmonary tuberculosis, commonly known as consumption, and that, in his opinion, a person suffering from tuberculosis as indicated by other proof in the record could not think that he was well.

Dr. Dean testified that he attended a member of Hodge's family in June, 1927, when Hodge told him that he was under the care of a physician in Cincinnati, and that he was under treatment for lung trouble. This doctor testified that at the time the appearance of Hodge was that he was undernourished, thin, anaemic, lacking in blood, generally run down, and appeared to be sick. He also gave it as his opinion that Hodge was not a person in sound health on the 19th day of December, 1927, and that he was not in sound health on the 13th day of December, 1927. He gave it as his opinion that in December, 1927, Hodge was in the advanced, or third, stage of tuberculosis.

Dr. Brueggeman testified that Hodge was admitted to the General Hospital in Cincinnati on the 29th day of December, 1927, and that Hodge said at the time that he had been suffering from lung trouble for about eight months; that his sputum was tinged bright red, and that he stated that he had spit blood in copious quantities in March, 1927, and that he had lost 50 pounds within the past nine months. This doctor found that he had a case of far advanced pulmonary tuberculosis of the entire left lung and upper lobe of the right lung. He found many other things from which he was suffering not necessary to mention. He stated that he was suffering with tuberculosis when he was admitted to the hospital, and that it was in a far advanced stage.

As against this evidence introduced by the company the appellee introduced many persons who had known Guy Hodge who testified that they had never heard him cough and had never seen him spit blood. It is insisted that this evidence was incompetent, but we do not think so. Those who had opportunities to observe him were in position to state what they had seen, and, while the evidence is of a very weak nature, it is competent to go to the jury for what it is worth. It has been held that a layman may testify of things within his knowledge as to the strength, vigor, and apparent physical condition of another person, and as to the presence or absence of symptoms indicating disease. It has been held that some diseases are so common and well understood as to be within the knowledge of a layman. The layman may not diagnose disease as an expert, but he may testify to facts within his actual knowledge. Grand Lodge, B. R. T. v. Johnson, 228 Ky. 669, 15 S. W. (2d) 499; Sovereign Camp, Woodmen of the World v. Morris, 212 Ky. 201, 278 S. W. 554. These cases are well in point. It was held in the case of Penick v. Metropolitan Life Insurance Co., 220 Ky. 626, 295 S. W. 900, that it is not always practicable to contradict a physician who had examined an applicant prior to his application by evidence of experts, and that in many instances all that the beneficiary could do was to offer evidence of facts and circumstances which, if true, tended to show that the diagnosis of the physician was incorrect, and that, when such evidence was produced, it made a question for the jury.

There was much evidence tending to show that Guy Hodge had not lost weight to the knowledge of the witnesses who had been in contact with him; that he had not spit blood; that he did not cough; and that there was nothing to indicate that he was suffering from tuberculosis. At least one witness testified that Hodge had worked for him as late as November 26, 1927, and that he observed nothing in the appearance, or conduct, of Hodge that would indicate that he was ill. Others testified that they had observed no change in his weight. This testimony came in part from members of his family.

The alleged errors relied on by counsel for appellant are in number five. The first relates to the alleged incompetent evidence, which we have disposed of except as to the evidence of the widow of Hodge. There is probably some basis for complaint about the testimony of this witness. She testified as to the weight of her husband and

as to his having worked at the carpenter's trade and other similar matters. She testified that her husband worked in the month of December, that she noticed no change in his weight during the two years preceding his obtaining the policy, and that she had never observed his coughing or spitting blood. In .the case of Penick v. Metropolitan Life Insurance Co., supra, the widow testified as to similar things regarding her husband, and this court held that the evidence was incompetent under the provisions of section 606 of the Civil Code, and under the authority of Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S. W. 461. In the introduction of evidence in such cases the trial court should be governed by the rule announced on this point in the cases cited.

Another alleged error is that the court should have sustained a motion for a peremptory instruction directing the jury to return a verdict for appellant under the authority of Ham v. Hord, 189 Ky. 317, 224 S. W. 868; Security Life Insurance Co. v. Black, 190 Ky. 23, 226 S. W. 355; New York Life Insurance Co. v. Long, 199 Ky. 133, 250 S. W. 812. The last-cited case follows the same rule as announced in the other two. It was there held that a soliciting agent could not testify that his company would have accepted the risk if it had known the falsity of the answers. It was held that he was not qualified to give an opinion that life insurance companies generally, and especially his company, which was more liberal than some others, would have accepted an application for insurance and issued a policy thereon if they had known that statements therein that the applicant was not engaged in the liquor business and had not been under a physician's care were false.

It was further held that on the issue of the materiality of false answers in an application for a life insurance policy a properly qualified witness could testify that insurance companies generally, while acting reasonably and naturally in the course of the life insurance business, would have accepted the risk under the circumstances, notwithstanding knowledge that the answers were false. It was also held that material misrepresentations need not be fraudulent to defeat a recovery on the policy under the provisions of section 639, Ky. Stats.

The evidence on the question of whether appellant would have accepted the application and issued the policy if it had known that the answers were false did not meas-

ure up to the requirements of the rule as announced in that case.

It is the general rule as announced in the case of Ham v. Hord, supra, that a peremptory instruction should not be given to the jury, where there is a conflict in the testimony, and reasonable minds might honestly differ as to the truth or falsity of conclusions, or deductions, to be drawn therefrom. There is a conflict in the evidence as to whether Hodge knew that he was suffering from tuberculosis at the time he made application for the policy. Looking at the evidence as a whole, it would appear that he must have known it, but there is evidence that he worked up to within two weeks of the date of the issuance of the policy, and that there was nothing in his general appearance indicating that he was suffering from any disease. It is true this evidence was given by laymen, but it was competent for what it was worth.

Another alleged error is that the court erred in refusing to give instruction marked A, and which was offered by appellant. Instruction A would have been a peremptory instruction to find for the appellant. The court did not err in refusing to give it. Instruction B, offered by appellant, would have told the jury that, if they believed from the evidence that Hodge was suffering from tuberculosis on the 19th day of December, 1927, the date when the policy was issued, he was not in sound health, and the verdict should be returned in favor of the appellant. Instruction D relates to the same issue. The question before us, therefore, is whether the appellant was entitled to an instruction to the effect that, if the jury believed, from the evidence, that Hodge was not in sound health at the time the policy was delivered to him, a verdict should be returned in favor of appellant. It is admitted by counsel for appellant that it is the general rule that, where there is a medical examination, or an inspection, of the applicant, a provision in a policy to the effect that it shall not be valid, if at the time of its delivery the insured was not in sound health, relates to an unsoundness in health that arose between the date of the medical examination; or inspection, and the time of the delivery of the policy. But it is insisted that this rule does not apply in cases such as this, and the case of Metropolitan Life Insurance Co. v. Taylor's Adm'r, 219 Ky. 549, 293 S. W. 1061, 1062, is

cited. That case, after correctly stating the general rule and citing authorities to support it, added:

> "Moreover, the rule does not depend on the extent of the examination or the name by which it is called, and applies both to a medical examination and what is termed an inspection. Metropolitan Life Insurance Co. v. Walters (215 Ky. 379, 285 S. W. 252, 60 A. L. R. 194), supra. However, if it be true, as alleged in the second paragraph of the answer, that there was neither a medical examination nor an inspection, there is no basis for the contention that the condition in the policy refers to unsoundness of health or disease occurring after an event that has never taken place, and the reason for the rule ceases."

The court did not attempt, in that case, or in the case of Metropolitan Life Insurance Co. v. Walters, supra, to define what was meant by an inspection. In the Walters case the court said:

> "If it be contended that the rule is not applicable in this case because there was no medical examination, but only an inspection of the applicant, the answer is that the rule is sound and should not be made to turn on the extent of the examination or the name by which it is called."

The inspection referred to in these opinions means a medical inspection by a doctor. There was no medical examination, or inspection, at the time Hodge made application for his policy. It follows, therefore, that the provision of the policy requiring him to be in sound health at the time the policy was delivered was a valid provision, and the appellant was entitled to an instruction on this point. There was evidence from which the jury may have inferred that he was in sound health on that date, although there was positive evidence that he could not have been in sound health at that time. It was error not to give an instruction covering this issue.

We do not determine whether the verdict of the jury is flagrantly against the weight of the evidence. That question is reserved.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.