## WIGGINS v. NEW YORK LIFE INS. CO.
### No. 619.

District Court, E. D. Kentucky.
Feb. 26, 1932.

R. J. Colbert and George W. Vaughn, both of Lexington, Ky., for plaintiff.

Bruce & Bullitt, of Louisville, Ky., for defendant.

ANDREW M. J. COCHRAN, District Judge.

This is an action on a life insurance policy, and is before me for trial and judgment, a jury having been waived by written stipulation. The policy was for $5,000, and was issued August 13, 1920. The plaintiff was appointed administrator of the insured by the circuit court of Fayette in this district in 1929, and this action was brought July 19, 1930, in the circuit court of that county, and removed from thence on the petition of the defendant to this court. The sole question in the case is as to whether the insured was dead at the time of such appointment and the bringing of this action. There is no proof of his actual death prior to that time. Reliance is had solely on a presumption that he was then dead.

The insured was the son of the plaintiff, and was born in Robertson county in this district February 16, 1900. Some time before the year 1918, possibly a number of years, his parents removed to Lexington, where they have ever since lived, leaving an older son in Robertson county, who still lives there. They brought the insured with them to Lexington, and he continued to live with them until the year 1918. During that year, after he had become 18 years of age, he went to Cleveland, Ohio, to work for Armour Packing Company, and continued to work for it there and in the vicinity until some time shortly before January 25, 1922. In the early part of August, 1920, he made a short visit to his parents in Lexington. Whilst there, to wit, on August 7, 1920, he made application for the policy of insurance. His application stated his residence to be in Cleveland, Ohio. Whilst he was living and working at Cleveland, he corresponded regularly with his parents, mainly with his mother, and at times sent home to his father a portion of his earnings. During this period of time, just when not appearing, he was secretly married. Whom he married and where his wife was from was unknown to his parents and family. Shortly after his marriage they were divorced at his suit. On January 25, 1922, his mother received a letter from him, mailed at Memphis, Tenn., in these words:

"January 25, 1922.

"Dear Mother:

"Don't worry. Am entering college this fall—won't say where. No mail will reach me here. Would never have amounted to anything at the rate I was going. Intend to square up some of these days. Don't spend nothing looking for me."

From the receipt of this letter until the date of this trial, June 16, 1931, neither parents nor his brother or sister have heard anything from or about him. The parents

had some letters from a man named Jolly, an associate of the insured. Seemingly these letters were written after his disappearance, though this is uncertain. They wrote him and requested him to notify them if he ever heard anything as to him, but received no answer. This was about two months after insured's disappearance. About two years afterwards, the plaintiff went to Cleveland to find out about him amongst the people with whom he worked and his landlady, but was unable to get any clew as to his whereabouts. He tried to find Jolly, but could not. Several years after this, just when not appearing, whilst passing through Memphis, he made an investigation to get some clew as to his son. He examined the police records and the daily newspapers for a week before or about the time that this letter was written, but was unable to find any trace of him.

The presumption of death on which plaintiff relies originated in the common law. Wigmore on Evidence, vol. 4, § 253, states that, as the presumption there stood, it arose "from the fact of the person's continuous absence from home, for seven years, unheard of by the persons who would naturally have received news from the absentee." He refers to it as "a genuine presumption, of long standing and universal acceptance." The defendant urges that this is not a case for the application of this presumption. The only ground put forward for this position is that plaintiff has not alleged in his petition that he has made a diligent search to find the insured and the evidence establishes that he has not. Before taking up directly this contention of defendant, I desire to consider and determine what is the law of this state as to such presumption and the necessity of a diligent search.

From an early date such presumption has been a matter of statutory provision in this state. By the Act of January 22, 1798, entitled "An Act declaring when the Death of Persons absenting themselves shall be presumed" (2 Littell's Laws, p. 28; 1 Statute Law of Kentucky 544), it was provided: "That any person absenting himself beyond sea, or elsewhere, for seven years successively, shall be presumed to be dead, in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

Provision was then made for restitution of an estate recovered in any such case if in a "subsequent action or suit the person presumed to be dead shall be proved to be alive."

The statute was silent as to the place from which such person had absented himself. Of course the meaning was—there seems to be no possibility of any other—from his home. That is how Wigmore puts it as to the common-law presumption which the statute must have had in mind. The presumption was a logical presumption. Absence for seven years from one's home where he would naturally be yields an inference, nothing else appearing, that he must be dead, and it is only absence therefrom that yields such inference. And such absence yields such inference no matter where the home may be.

The case of Spurr v. Trimble, 1 A. K. Marsh. (Ky.) 278, involved the question as to whether the death of Gilbert Imlay, "a spectator" of much that happened in the early history of this state, but not a resident, had been established. The absence relied on was from the state. It was held that this was not sufficient. The court then said, after referring to the statute: "Yet as Imlay has not been proven to have so absented himself from the country of his residence, his death ought not, in the present contest, to be presumed."

The absence referred to was not from his residence, but from "the country of his residence." But, as the contention was that absence from this state established presumptively his death, there was no occasion for the court to be more specific as to the place, absence from which was necessary to give rise to the presumption. It was recognized that absence for seven years from any country constituting the residence of the person whose death was in question came within the statute.

It is to be noted that, according to Wigmore, seven years' absence was not sufficient in and of itself to give rise to the presumption, as it was essential also that during that time the absentee was "unheard of by the persons who would naturally have received news from him," but, according to the statute, seven years' absence without more was sufficient. It was deemed that such an absence was such an unnatural occurrence as in and of itself to give rise to the presumption. But it was provided that such presumption would be overcome by proof from the opponent that the absentee "was alive within that time." This could be done by evidence to the effect that he had been heard from or that he had been seen and possibly in other ways. It was no part of the statutory provision that any search, diligent or otherwise, had been

made to find the absentee. Nor does Wigmore refer to it as being essential to give rise to the common-law presumption.

This statute remained in force, seemingly, until the enactment of the Revised Statutes of Kentucky which went into force July 1, 1852. By section 22 of chapter 35 thereof, entitled "Evidence," it was provided: "If any person who shall have resided in this state, go from and do not return to this state for seven successive years, he shall be presumed to be dead, in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

This provision has been in force ever since, and is now section 1639 of chapter 45 of Kentucky Statutes, entitled "Evidence." It is exactly the same as the statute of 1798, except as to its opening and conditional clause. It has substituted the words, "If any person, who shall have resided in this state, go from and do not return to this state for seven successive years," for the words, "That any person absenting himself beyond sea, or elsewhere, for seven years successively," in the earlier statute. According thereto the presumption arises if the person whose death is in question shall go from this state and not return thereto for the required period. It is not sufficient that he go from his home in this state. It is essential that he go from the state. Literally it is not required that such person be a resident of the state at the time of his departure. It is sufficient that he had theretofore "resided" therein. If he has had such previous residence, but two things are necessary to the creation of the presumption—departure therefrom and failure to return thereto for seven successive years. The proponent need establish no more, just as under the previous statute he need not establish that he had not been heard from. Nor was a diligent search necessary to its creation.

In the case of Fuson v. Bowlin (Ky.) 30 S. W. 622, 623, 17 Ky. Law Rep. 128, the court said: "It is, in substance, stated in the petition that James had gone from the state, and had not returned to the state for more than seven successive years. These allegations created the presumption that James was dead. Any one who questioned statements of fact which created the presumption could prove that he was alive within that time. This is but a statement of the plain provision of the statute."

In the case of Duncan v. Clore, 189 Ky. 132, 224 S. W. 678, 680, it was said: "It will be found by an examination of the many decisions of this court, making application of the provisions of this statute, that when the facts are established which create such presumption of death the burden of proof is shifted to the person attacking the presumption to prove that the person claimed to be dead is still alive."

In the case of Western & Southern Life Ins. Co. v. Nagel, 180 Ky. 476, 203 S. W. 192, 193, the matter is put more loosely thus: "Weesner's death is presumed by reason of his continued absence for seven years unheard of."

It is apparent, therefore, that the statute does not recognize that a presumption arises from the departure by person from his home in another state or from another state. It is tempting to infer that the change in phraseology had in view the recognition in Spurr v. Trimble that, under the previous statute, absence from another state than Kentucky in which the person resided would give rise to the presumption and to limit thereafter its arising to a departure from the state. That the statute is limited to a departure from this state was held in the case of Ironton Fire Brick Co. v. Tucker (Ky.) 82 S. W. 241, 242, 26 Ky. Law Rep. 532. It was there held, as to the person whose death was in question, that there was no presumption thereof because he "did not go from this state when he went to Indiana. He was a resident of Ohio, and went from Ohio to Indiana."

In the case of Bank of Louisville v. Board of Trustees, 83 Ky. 219, 5 S. W. 735, 738, it was said as to the statute: "It only applies to cases where persons leave the state, and do not return for seven years." It was held that the presumption did not exist in that case because the testimony did not show where the persons whose deaths were in question "lived, or that they left the state." But no decision of the Court of Appeals is necessary to uphold the position that this statute is limited to persons who have gone from this state. Such are its very terms. Nor does it seem that the statute applies to a case where the person has gone from this state and established a residence elsewhere. It applies only to one who would naturally be expected to return thereto. There can be no such expectation as to such a person. In the case of Gray v. McDowell, 6 Bush, 475, it was held that there was no presumption of death under the statute as to a person who had gone from this state to Missouri and established a residence there. It appeared that after so doing he left Missouri, but where he went to did not appear. After his going there, he

formed a connection with the Mormons, and it was surmised by the court that he may have gone to Salt Lake City or some very remote part of the country. But it was not important that he had left Missouri. It would have been sufficient that he had gone to and established his residence in that state. That this is so appears from the decision in the case of Pool v. Pool, 214 Ky. 267, 283 S. W. 111, 113. There the person whose death was in question had also moved from this state to Missouri, but there was nothing showing that he had moved from Missouri, as in the case of Gray v. McDowell. Yet it was held that the statute did not apply. He had so moved twenty-seven years before the bringing of the suit in which the question arose. He had corresponded with his mother up until four or five years before her death in 1914. It is not certain, but it is not unlikely, that more than seven years had elapsed since his mother had last heard from him. The court said: "Not being a resident of this state, our statute (section 1639) relating to presumption of death does not apply." It would have been better to say that the statute does not apply because he had become a resident of Missouri after leaving this state.

Another question has arisen as to the application of the statute, and that is whether it ever applies where the person has been proven to be alive after he leaves the state. Apparently it can have no application in such a case. But it was held that it applies in such a case. Mutual Benefit Life Ins. Co. v. Martin, 108 Ky. 11, 55 S. W. 694, 695, 21 Ky. Law Rep. 1465. That was an action on an insurance policy, and the question was, as here, whether the insured was dead. The insured was James W. Tate, former treasurer of this state, who had embezzled its funds and then absconded. He left the state March 16, 1888. Thereafter until December 3, 1888, he wrote regularly to his wife and daughter. It was plain that the statute did not apply because of this fact and contended that the statute only applied "where the person leaves the state and does not return for seven successive years and he is not shown to be alive after he left." The court said: "We think this would be a narrow construction of the statute. If this is its meaning, it would not apply to any case where the party was heard from after he passed the borders of the state, though only the next day after his departure, as he was on his journey away. * * * The statute must receive a reasonable construction with a view to promote its object. It is necessary to have some period when the presumption of life ceases in this class of

cases, and it seems to us a fair construction of the statute to apply it where the person leaving the state is absent for seven consecutive years after he is last heard from, and then to throw the onus of proving the person alive on the other party."

To the same effect was the decision in the case of Foulks v. Rhea, 7 Bush, 568. It was urged in the Tate Case that the statute only applied to those leaving the state who had no good reason for staying away. The court held otherwise. It said: "The question is not free from difficulty, but we do not feel warranted in interpolating into a statute exceptions which it does not contain."

A further feature of this case should be noted. The lower court had instructed the jury that, if they believed from the evidence that Tate had not been heard from for seven successive years continuously from December 3, 1888, they should find for the plaintiff. This instruction was held erroneous. The effect of this decision was that the presumption of death arising from departure from the state and absence from the state for seven successive years without being heard from may be repelled otherwise than by direct proof that the person was alive within the seven years. The court said: "When the plaintiff shows that a resident of the state has been absent seven successive years from the time he left, or from the time he was last heard from, the burden of proof shifts to the defendant to overcome the presumption of his death. This proof may be direct, or it may be circumstantial, arising from the circumstances under which the person left, his reasons for leaving, or concealing his whereabouts, his age, condition of health, his motives for not returning or keeping in communication with his home, and the like."

It was held that the jury should have been instructed that "the law presumed him (the insured) dead unless it was shown that he was alive within the time (the seven years after he was last heard from), but that such presumption (like that of innocence or sanity) might be repelled by the proof and that the jury should consider, in connection with this presumption, all the circumstances shown by the evidence attending the departure of Tate, and the reasons for his absence, if any, and it was a question for them to determine on all the evidence whether Tate was alive or dead when the suit was filed."

■ This covers the decisions of the Court of Appeals of Kentucky as to the application of the statute. This survey is not complete without taking note of the fact that, accord-

ing to them, the statute is not exclusive. A presumption of death may arise in a case to which the statute does not apply. Such a case exists where under the common law a presumption would arise. The statute was not intended to and does not do away with the common-law presumption, as for instance the departure to which the statute relates is from this state. The presumption may arise where there has been no departure from the state. A departure from the home or residence in this state without such departure may be sufficient to give rise to the presumption. In the case of Howse v. Stoker, Mss. Opin. December 1857, 1 Stanton Rev. Stat. p. 470, note, it was held: "The statute was not intended to exclude all presumptive evidence of death, except those provided for by it. And where a party left his house ten or twelve years ago, to go to a blacksmith shop in the neighborhood, * * * and has not been seen or heard of since, the presumption of his death is almost conclusive."

To the same effect is the decision in the case of Hill's Adm'x v. Metropolitan Life Ins. Co., 240 Ky. 172, 41 S.W.(2d) 935, 936. It was there said: "Under the common-law rule it is not necessary to show that the person who disappears left the state, but only that he departed from his place of residence and has not been heard of for seven years by those who, were he living, would naturally hear from him."

It is to be noted that under the common-law rule as here stated and as put by Wigmore it is necessary to prove that the absentee has not been heard from in order to the existence of the presumption, whereas under the statute it is not necessary. Under it all that is necessary is departure from the state and nonreturn for the requisite period, though the presumption arising therefrom can be overcome by evidence from the opponent that he has been heard from during that period.

Another instance of this position may be found in the case of Prudential Ins. Co. v. Gatz, 182 Ky. 218, 206 S. W. 299, 300. It was there held that a presumption of death may arise where the person leaves another state and does not return thereto after seven successive years from the time of his departure. The facts of that case are like those in the case of Gray v. McDowell, supra, in that such person had been a resident of this state and went therefrom to such other state. The action was on an insurance policy as here, and the question was as to the death of the insured. He lived in Louisville at the time the policy was issued, and lived there until 1907, when

he and his wife moved to Indianapolis, Ind., where he engaged in the saloon business until July 23, 1909, when he disappeared. On the morning of his disappearance he told a friend good-bye, and said, "You will never see me any more." His wife remained in Indianapolis for about ten weeks, when she moved back to Louisville. The suit was brought on the policy March 7, 1917. The insured had been absent from Indiana and Kentucky until then, and had not been seen or heard of from the time of his disappearance. It was claimed that, as the case did not come within the statute, there was no presumption of death, and the action was not maintainable. The defendant contended that the statute was "inconsistent with the common law rule with reference to the presumption arising from seven years absence and that by its enactment the Legislature completely covered the subject and that the common law rule was thereby repealed and is no longer in force in this state." I have already intimated that, in view of its relation to the previous statute and the construction placed on it in Spurr v. Trimble, supra, this contention was not without some force. The court decided against it. It said: "The consequence of this argument, if sound, is that the Legislature has left one situated as is the appellee in such a position that there will never be any presumption of death from the disappearance of her husband while a resident of another state, because the act, if given the narrow construction contended for, is applicable only to residents of this state, who go from and do not return to this state; but that such was not the purpose of the Legislature, and is not the effect of the act we are quite sure. The act is, in our judgment, simply declaratory of the common law as recognized in this state at the time of the enactment."

It is open to say that the original statute was a declaration of the common law, but hardly that the present statute is.

Seemingly the court was of the opinion that possibly, at least, the case was covered by the statute, in that the insured had gone from this state to Indiana. In comparing that case with the case of Mutual Benefit Life Insurance Company v. Martin, supra, it said: "The only difference between the two cases is that in the Martin Case, the absentee disappeared from this state while a resident thereof, and was heard from for about two years before he was lost track of in another state, while in the case at bar, a resident of this state moved therefrom and lived in another state for about two years when he disap-

peared and all trace of him was lost. But this difference does not seem material, when it is admitted that this court has jurisdiction to try the case, because, if the statute should be so narrowly construed as to apply only to such persons as disappear from this state, while a resident thereof, it is apparent that the Legislature did not cover the whole subject of the common-law rule, and that the common-law rule is still in force and effect with reference to all other persons who disappear and remain away from their place of residence without being heard of for a period of seven years, whenever it becomes important in this state to determine whether or not they are still alive. And whether we hold the statute or the common law applicable, it is quite apparent that the statements of the petition with reference to the disappearance and continued absence of Gatz are broad enough to comply with either the statute or the common-law rule with reference to a presumptive death."

It was further contended by defendant that no recovery could be had because there was no diligent search. It would seem that a diligent search had been made so far as Indianapolis was concerned, and the claim of lack of diligence was based on the failure to inquire in all places where the insured may have had relatives or to which he possibly may have gone. It was held that the making of a diligent search was not essential to the arising of the presumption. The court said: "It has been held in several jurisdictions that the presumption of death does not arise from an absence * * * of * * * seven years without having been seen or heard from, until there has been proof of diligent, but fruitless, effort to locate the absentee, and such seems to be the weight of the more recent decisions. Some few cases go even so far as to hold that all available sources of information must have been exhausted without result before a prima facie case of death is established. There are many cases, however, holding that search and inquiry are not necessary, and in none of the cases in this state involving this question has it ever been held that it was necessary to make a diligent search and inquiry before a presumption of death could arise, although the question of presumptive death has frequently been before this court."

It said again: "This more moderate rule, we are constrained to believe, is the sound and correct rule, in spite of many recent decisions in other jurisdictions holding to the contrary."

As to the effect of this decision, it is said on behalf of defendant: "The Kentucky Court of Appeals has developed some kind of a theory of combining certain elements of the statute with certain elements of the common law rule and thereby obviating the necessity for diligent search; but the exact nature of that 'combination rule' is difficult of ascertainment."

But this is a mistaken view of the matter. This case puts forward no such "combination rule." It simply holds that neither under the statute nor under the common law is the making of a diligent search a prerequisite to the arising of the presumption. It certainly is not so under the present or the previous statute. It is the departure from and failure to return to this state that gives rise to the presumption under the present statute and the absence that gave rise thereto under the latter statute. There being no such necessity under the statute, the court could hardly recognize such necessity under the common law. To do so would be inconsistent with the thought of the statute.

The position taken in this case that where a resident of this state left it and took up his residence in another and shortly thereafter left the latter state was within the statute, was accepted and followed in the case of Modern Woodmen of America v. Hurford, 193 Ky. 50, 235 S. W. 24, 26, 21 A. L. R. 1340. This was an action on an insurance policy issued to a resident of Paducah in this state. The policy was issued in April, 1911. In October, 1911, he, then being 20 years of age, went away and never returned. In April, 1912, he was seen in Morley, Mo., and said to the person who had seen him that "he was going down into the swamps to get some timber, him and some other fellows." This was the last that was ever heard of him. The action was brought in August, 1919, and it was held that the plaintiff was entitled to recover. The evidence hardly established that the insured had taken up his residence at Morley, Mo., but the defendant took the position that it did. It urged that no recovery could be had because the case did not come within the statute in that the insured "had established residence in the state of Missouri after his departure from Kentucky, and if he disappeared, as contended by the beneficiary, he did so from the state of Missouri and not from the Commonwealth of Kentucky." Of course if by reason of this state of fact the case did not come within the statute, recovery could be had under the common-law rule. But the court did not base its decision on the right to recover on the common-law rule, but on the statute, and that under the state of facts as claimed by defendant. The court

said: "In the Gatz Case the facts were very similar to the ones here involved, and it was distinctly held that section 1639, Kentucky Statutes, does not repeal, but is simply declaratory of the common-law rule that after an absence of seven consecutive years, without intelligence concerning the appellee, a presumption is created sufficient to throw upon the other party the burden of proving the person to be alive, and although the insured in the Gatz Case had with his wife and children departed from the state of Kentucky and taken up his residence in Indianapolis, Ind., where he remained several months, conducting a business, and had while there suddenly and unexpectedly announced his intention of abandoning his home and family and did in fact abandon his home, family, and place of business in the state of Indiana, from which place his wife and family soon returned to Kentucky and after a lapse of more than seven years without intelligence from her husband, the wife, being the beneficiary in the policy of insurance, instituted her action in the Jefferson circuit court of this state to recover on the policy of insurance and her claim was upheld by this court, although the defense in that case, as in this, was largely rested upon the fact that the insured did not disappear from the state of Kentucky but from a foreign state in which he had acquired a residence. It must be admitted that section 1639 of our Statutes concerning the presumption of death from absence is somewhat peculiar and hardly as comprehensive as the common law upon the subject. It applies to any and every person who shall have resided in this state and who has gone from and not returned to this state for seven successive years. Its operation may be defeated by evidence that the one who so disappeared from the state was alive within the seven years next before the question arose or the suit instituted. The rule applied in the Gatz Case is conclusive of the question here. And we must hold that an absence of seven years of one who shall have resided in this state and has gone from and not returned to this state for seven successive years, and who has not been heard of or from, raises a presumption that such person is dead, which presumption can only be overcome by the introduction of proof to the contrary."

It was not thought that the fact that the person whose death is in question had established a residence in another state after his departure from this state took the case out of the statute but seemingly it was held to the contrary. But it is to be noted that the person there was assumed to have left such other

state shortly after he went there and was a single young man. In the circumstances, the case differed from those in the later case of Pool v. Pool. As to the statute, the court said that it was "a part of our public policy" and because thereof held void a provision in the insurance policy in conflict therewith.

Seemingly, in the case of Hill v. Metropolitan Life Ins. Co., supra, the last decision coming from the Court of Appeals of Kentucky involving the question as to presumption of death, it was accepted that a diligent search was necessary in order thereto. The court said: "It is argued that there can be no recovery under the common-law rule because there is no proof that a diligent search had been made for Hill. The general rule is that diligent efforts to find the missing person must have been made before the presumption of death arises."

It was then said that this requirement would be met by showing that "inquiry had been made of all persons who would naturally hear of or from Hill." This cannot be taken as overturning or qualifying the ruling in the Gatz Case, which was referred to in the opinion, that in this state diligent search is not essential in order to the presumption either under the statute or the common-law rule.

We are now in position to apply the law which has thus been developed to this case. It is open to say that it comes within the letter of the statute. The insured had resided in this state. He departed therefrom in August, 1920, and never afterwards returned. It may be said that it is not within the letter, in that he has been shown to be alive thereafter and up until January 25, 1922. But, as held in the Martin Case, it is within the intent of the statute, in that seven years have elapsed after that date during which time he has not been shown to be alive. If, however, it be taken that the thought of the statute that the person whose death is in question must have been a resident of the state at the time of the departure, the decisions in the Gatz and Hurford Cases may be cited in support of the position that the case still comes within the statute. In 1918, whilst a resident of this state, the insured departed therefrom, and, though he took up his residence in Cleveland, Ohio, he subsequently departed therefrom on January 25, 1922, and was absent therefrom for more than seven years thereafter without being heard from. The return to Kentucky in August, 1920, was not a return within the meaning of the statute. If it was, his departure thereafter was also, and the case comes within the statute ac-

cording to the first suggestion made. That he was alive until January 25, 1922, merely postponed the beginning of the running of the seven years until then. And there is greater reason for bringing the case within the statute on this view of it than the Gatz Case. When the insured left the state in 1918 he was but 18 years of age, and he did not come of age until February 16, 1921. Until then his domicile or legal residence was in Kentucky with his father. In 9 R. C. L. p. 547, it is said: "The domicile of an infant, if legitimate, is that of the father if living."

He has no power to change it. Possibly the insured here was emancipated by his father, though he seems to have transmitted at least a part of his earnings to his father. But, even if he was emancipated, this gives him no power to change his domicile. Delaware, L. & W. Ry. Co. v. Petrowsky (C. C. A.) 250 F. 554, 560; Gulf, C. & S. F. Ry. Co. v. Lemons, 109 Tex. 244, 206 S. W. 75, 5 A. L. R. 943, note, 949. Nor did his marriage during his infancy have any effect thereon. In 19 C. J. p. 414, it is said: "The domicile of a male minor remains unaffected by his marriage."

In the case of Delaware, L. & W. Ry. Co. v. Petrowsky, supra, it was said: "We are not now concerned with this except to observe that marriage of a minor does not emancipate him from all the disabilities of his infancy. Chapman v. Hughes, 61 Miss. 339. And it does not appear that it entitles him to acquire a domicile."

The effect of his coming of age whilst living at Cleveland did not of itself create a change in his domicile. In 9 R. C. L. p. 549, it is said: "It has been held that the attainment of his majority by a minor according to the law of the domicile does not ipso facto emancipate him or separate him from the domicile of his parents. He has merely acquired the power to possess a separate domicile if he desires."

In the case of Overseers of Poor of Alexandria Tp. v. Overseers of Poor of Bethlehem Tp., 16 N. J. Law, 119, 31 Am. Dec. 229, it is said: "The age of twenty-one, is fixed upon and spoken of in the books, not as the period when emancipation takes place; but as the age, at or subsequent to which, the child may emancipate himself by withdrawing from his father's family, and setting up for himself in the world."

Of course, if the insured married after he became of age, the effect thereof was to change his domicile. But it does not ap-

pear that he married thereafter. The likelihood is that he did not. But possibly this is a far-fetched view of the matter. I would not stress either of these views according to which the case is within the statute, but would dispose of it solely on the basis that it was not within it. It must be brought under the common-law rule, or the petition must be dismissed. It seems to me that it does come within the common-law rule. The insured left Cleveland about January 25, 1922, and has not been heard of since by those who would naturally hear of or from him. The only consideration which has been urged against the application of that rule is that there has been no diligent search. However the law may be elsewhere, it must be accepted that in this state there is no such requirement. Clearly in cases coming within the statute there is none. This was so under the original statute which may be said to have been declaratory of the common law. The present statute, so far as it goes, has been held by the Court of Appeals of Kentucky to represent the policy of the state, and, because it does, a stipulation in an insurance policy in conflict therewith has been held invalid. It is inconceivable that it could be the law of this state that in a case not coming within the statute, but under the common-law rule, such a search is required. The law of this state should be followed by this court, particularly as this case was removed from the state court. It would have to do so if the case came under the statute. This court no more than the state court should take the eccentric position that no diligent search is required in a case coming under the statute, but is required in one not coming under it but under the common law. The question is one of procedure. The Kentucky statute on the subject is contained in the Statutes of Kentucky in the chapter entitled "Evidence." It is dealt with in the works on evidence. The law as to following state rules of evidence is thus stated:

28 USCA § 725, p. 201, note: "The weight of authority seems to be that in civil actions at law the federal courts will follow the decisions of the highest state court as to the rules of evidence, whether they are based upon a statute or upon the rules of the common law."

Numerous decisions are cited in support of this statement. In the case of American Issue Pub. Co. v. Sloan (C. C. A.) 248 F. 251, 253, the appellate court of this circuit said that: "The result of the Conformity Act (Rev. Stat. § 914; 28 USCA § 724), the Rules of Decision Act (Rev. Stat. § 721; 28 USCA § 725), and the Competency of Wit-

nesses Act (Rev. Stat. § 858; 28 USCA § 631), is to make state statutes relating to the competency of witnesses and the competency of testimony, as well as the state law of evidence generally, binding on the federal courts sitting within such state, except where in conflict with the federal Constitution, statutes, or treaties."

It may be true that the weight of authorities supports the position that under the common-law rule diligent search must be shown. The defendant has cited many decisions to this effect. I have not gone into them to determine just what they stand for. But there are respectable authorities to the contrary. I know of no federal decision determining the question. The defendant cites the case of Fuller v. New York Life Ins. Co. (C. C. A.) 199 F. 897, as upholding its contention. I am unable to make out that it does.

 But, even if diligent search was required, it seems to me that the plaintiff has made all the investigation which could reasonably be expected of him. He made all that seemed to him likely to yield results. Naturally he would want to find his son and would resort to all reasonable efforts to locate him. It is said that he should have communicated with the woman he married and from whom he was divorced, when he did not know who she was or where she lived, that he should have investigated the colleges in Ohio and Tennessee, and that he should have made inquiry amongst his relations, scattered over different states, Indiana principally, with whom he had no communication for twenty-five or thirty years. It seems to me that it is unreasonable to hold that he should have gone to such lengths to find his son. There was no likelihood that such investigation would have led to any results. The defendant has not seen fit, with all the facilities at its hands, to make such investigation. But it is said on behalf of the defendant that there are indications that the insured is still alive. This is based on the idea that his letter to his mother of January 25, 1922, indicated that he desired to pass out of the knowledge of his parents. This is true, but only for the time being and not permanently. He was dissatisfied with his education and wanted to amount to something. He expected to bring this about, and when he did so he would want to see them again. He told them that he intended "to square up some of these days." The plaintiff understood this to refer to money that he had let him have. These references indicate that, whilst he wanted for the time being to pass out of the knowledge of his parents, he expected to come back into their knowledge a better man. This renders his continued absence more inexplicable.

 I am constrained to hold that the plaintiff is entitled to recover on the policy, but his petition is too skimpy as to the insured. It should allege that he was born February 16, 1901, in Robertson county, and raised there and in Lexington; that he lived with his parents until he was 18 years of age; that thereupon he went to Cleveland, Ohio, to work for Armour Packing Company, and continued to do so until shortly before January 25, 1922; that in August, 1920, he came home to see his parents then living in Lexington, and whilst there applied for the policy in suit; that he returned from there to Cleveland and resumed his work; that whilst at work at Cleveland he corresponded with his parents and members of his family; that he left Cleveland shortly before January 25, 1922, and wrote to his mother from Memphis, Tenn., the letter of that date; that since then plaintiff and his wife, brother and sister, have heard nothing from or about him; and that plaintiff has made a diligent search to find trace of him at Cleveland and Memphis and been unable to do so. An amended petition can be filed stating these facts in substance which will be traversed of record. I think that plaintiff is entitled to recover the premium paid August 7, 1929. The defendant may be right as to interest on dividends.