### WILSON v. JEFFERSON STANDARD LIFE INS. CO.
### No. 469.

District Court, W. D. Kentucky, Paducah Division.

Sept. 17, 1936.

Charles Ferguson, of Smithland, Ky., for plaintiff.

Bruce & Bullitt and R. Lee Blackwell, all of Louisville, Ky., for defendant.

HAMILTON, District Judge.

This case is pending before me on motion of the plaintiff for a new trial to set aside the judgment entered on August 22, 1936, dismissing plaintiff's petition without prejudice. I have concluded after a re-examination of the case that the judgment complained of should be set aside and one entered for the plaintiff.

This action was originally instituted in the Livingston circuit court in Livingston county, Ky., on July 30, 1935, by plaintiff, L. L. Wilson, as administrator of the estate of Reed R. Trail, deceased, seeking to recover from the defendant, Jefferson Standard Life Insurance Company, the sum of $5,000 on a policy issued December 31, 1925, No. 263,979.

Alternative relief was asked in the sum of $2,500 if Trail's death was not accidental. The claim on the policy was based on a presumption of death due to absence and disappearance of Reed Trail from his place of residence without being heard from by those who would be expected to hear from him if living. This suit was removed from the state court to this court on the ground of diversity of citizenship, and thereafter, by agreement of parties, a jury was waived and the case tried before the court.

Reed R. Trail was born January 25, 1904, and lived with his father and mother in Livingston county, Ky., until their death; his mother having died some time in 1920, and his father in 1923. He has a one-third interest, worth approximately $4,000, in 529 acres of land in Livingston county, Ky., which he owned jointly with his sisters, Mrs. Opha Wilson and Miss Edna Trail.

In January, 1928, he was living at the home of his sister and brother-in-law, Mr. and Mrs. L. L. Wilson. Early in January, 1928, he left there in his own automobile, taking with him two friends, L. W. Gardner and Harvey Dunn. The trio first went to St. Louis, Mo., then to Memphis, Tenn., and thereafter to Corsicana, Tex., where they separated and Trail went to Shawnee, Okl. His brother-in-law, the plaintiff, received from him a letter written on the stationery of the Hotel Walcott, Shawnee, Okl., dated March 24, 1928, as follows:

"Mr. L. L. Wilson

"Smithland, Ky.

"Dear Lewis:

"How is everybody getting along back home. I was up to Tulsa yesterday and day before and that sure is a nice town. I believe there is more going on in Tulsa than any place I've ever been. We are down in Shawnee now. Paul took me through the Semionole oil fields the largest in the country it is thirty-five miles long and nine miles wide, wells just as thick as they can drill them; it certainly is a sight worth seeing. Lewis, I got me a job at last. You know Paul Turner I was telling you about, he is a drilling contractor and is moving his riggs down in West Texas the first of next week. It will take about a week to move them, and he said if I wanted to go down there with him he would give me a job. It will pay $200.00 or $250.00 a month, and Paul said he would teach me the drilling end of it, which would take six or eight months to learn, then I ought to be able to make some good money. I heard Paul turn down a job yesterday at $800.00 a month going to work for another fellow, so it must be a pretty good thing to know. Lewis, I may have to have a little more money to get me down their

and hold me over till I go to work, for it will be about a week before he can get everything ready to start to work then as soon as I can make any I will start paying it back. I don't want to miss this chance because it sounds like a good thing to me. Lewis, I will write you again in a day or two and tell you where I am and how I'm getting along, guess we will be leaving here about Monday. How is Dode and Jimmie getting along. Give everybody my regards.

"Reed."

This letter was not answered and none of his relatives again heard from him. His brother-in-law had a power of attorney to act for him in the management of his property, and also paid the insurance premiums on the policy which is the subject of this litigation.

The plaintiff was, by proper orders of the Livingston county court, on July 19, 1930, duly appointed administrator of the estate of Reed R. Trail, and thereafter, before the institution of this action, filed proofs of death with the defendant, and it declining to pay the sum alleged to be due under the policy, this action was instituted.

The plaintiff inquired of Gardner and Dunn as to the whereabouts of Trail, and neither was able to give any information concerning him. He also wrote persons in Texas without being able to find a trace of him. No inquiry was made at Shawnee, Okl., nor was any effort made to locate or communicate with Paul Turner, referred to as a companion in his last letter home. No attempt was made to trace Trail's automobile or to locate him through police departments. The inquiries were made of Trail's kinspeople and a meager correspondence was had with persons in Texas.

When I first considered this case, I was of the opinion that the duty rested on the plaintiff to show a search, or make inquiries at Shawnee, Okl., the last known place of Trail's whereabouts; but after further consideration of the subject and extant law in relation thereto, I have concluded this is unnecessary.

The defendant insists that the plaintiff, a brother-in-law of the deceased and the husband of one of the beneficiaries of the estate, is an incompetent witness, and that his two sisters likewise are incapable of testifying.

Section 606 (2) of the Kentucky Civil Code of Practice provides (with some exceptions not material here): "No person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted."

As construed by the Court of Appeals of Kentucky, this section makes incompetent as witnesses the sisters of the deceased, they being beneficiaries of his estate. The plaintiff undertakes to avoid the inhibition of the Kentucky Code as to these witnesses on the ground of necessity, because the presumption of death by reason of absence must be established by showing the absent one has not communicated with relatives or friends, and that the sisters, the beneficiaries of the estate, are the nearest of kin and the only ones who could testify as to noncommunication. No such exception is found in the Code, and the necessity of applying it, if such were proper, does not appear in this case.

The beneficiaries of one presumptively dead may have others competent to testify to make a diligent search, which would make easy the determination of the essential facts. The Kentucky decisions make incompetent the testimony of the next of kin and beneficiaries. Penick v. Metropolitan Life Insurance Company, 220 Ky. 626, 295 S.W. 900; Equitable Life Assurance Society v. Bailey, 203 Ky. 339, 262 S.W. 280, 39 A.L.R. 160; Prudential Insurance Co. v. Hodge's Adm'x, 232 Ky. 44, 22 S.W.(2d) 435; North American Accident Insurance Company v. Caskey's Adm'r, 218 Ky. 750, 292 S.W. 297; Combs v. Roark, Adm'r, 206 Ky. 454, 267 S.W. 210.

The plaintiff, the husband of one of the beneficiaries, is a competent witness in this case. Section 606 (1) of the Kentucky Civil Code of Practice provides: "Neither a husband nor his wife shall testify while the marriage exists or afterwards concerning any communication between them during marriage. Nor shall either of them testify against the other. Nor shall either of them testify for the other, * * *

except in actions which might have been brought by or against the wife, if she had been unmarried, and in such actions either, but not both, of them may testify."

The representative of an estate is competent to testify of transactions and conversations with a decedent, unless he is interested in the recovery, and his interest must be certain and vested at the time he is offered as a witness. Combs v. Roark, supra; Swineboard v. Bright, 119 Ky. 684, 62 S.W. 484; Bannon v. Patrick Bannon Sewer Pipe Co., 136 Ky. 556, 569, 119 S.W. 1170, 124 S.W. 843; Hicks et al. v. Oak's Adm'r, 233 Ky. 27, 24 S.W.(2d) 917; Farmers' Exchange Bank v. Moffett, 256 Ky. 160, 75 S.W.(2d) 1063. The administrator, plaintiff here, has no present interest in the estate of the decedent. It has been urged that even though he is disqualified to testify for his wife, he is a competent witness for the other beneficiary, his wife's sister. However, if he is incompetent to testify for one, he is likewise disqualified to testify for the other. The interest of the two sisters is inseparable; both or neither must recover. Dunbar v. Meadows, 165 Ky. 275, 176 S.W. 1167.

If plaintiff's wife had been unmarried, she could have qualified as administratrix of her deceased brother's estate, and thereafter prosecuted this action; therefore, this case falls within one of the expressed exceptions of section 606 and there is no bar to the competency of the plaintiff as a witness. Louisville & N. v. Hall, 143 Ky. 497, 136 S.W. 905; Walker's Assignees v. Walker (Ky.) 114 S.W. 338; Howard v. Tenney, 87 Ky. 52, 7 S.W. 547; Taylor, Jr., & Sons v. Johnson (Ky.) 99 S.W. 320.

With plaintiff's testimony in the record, and that of the two sisters excluded, it is substantially shown the insured was unmarried and lived at the home of the plaintiff in Smithland, Ky. He owned real estate jointly with his sisters, and in January, 1928, voluntarily left the place of his residence to temporarily go elsewhere, and since that time has not returned. He was last heard from on March 24, 1928. By the English Common Law, since James I, the continuous absence from a person's place of residence for a period of seven years, during which time nothing is heard from him, establishes a presumption of death, which is open to rebuttal by proof of counter presumptions. The English rule generally prevails in this country, and in most states is a subject of statutory law.

There are two distinct rules of burden of proof prevailing in the United States in establishing the presumption of death by reason of seven years continuous absence. One rule requires the plaintiff to show diligent search and inquiry of all available sources of information. The other requires only a showing of an absence from the place of residence for seven years without intelligence concerning the absentee.

The Kentucky Statute on the subject, Carroll's 1930 Edition, § 1639, provides: "If any person who shall have resided in this state, go from and do not return to this state for seven successive years, he shall be presumed to be dead, in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

It will be noted this statute does not require search before the burden of proof shifts.

In all "disappearance" cases, it is obvious there can be no direct evidence of death; otherwise it would not be such a case. The proof must in all such cases be circumstantial, and obviously the circumstances will vary.

The plaintiff establishes the presumption of death under the Kentucky statute when he shows by competent evidence a continuous unexplained absence for a period of seven years. At the close of the period the presumption of the continuance of life is overcome and the burden shifts to the other side.

Judge Cochran, in Wiggins v. New York Life Insurance Co. (D.C.) 2 F.Supp. 365, construed the Kentucky statute to mean diligent search was not required to establish the presumption of death, and in his opinion reviewed all the Kentucky cases on the subject. The defendant claims in a later case the Kentucky Court of Appeals, in National Life & Accident Insurance Co. v. Pate, 246 Ky. 186, 54 S.W.(2d) 663, departed from its earlier decisions and construed the Kentucky statutes and the applicable common-law principle to require a showing of diligent search before the presumption of death from absence was established. An examination of the cited case reveals that defendant's counsel misapplied it. The facts showed the insured was temporarily in Paducah, Ky., when the policy was issued. His place of residence was Detroit, Mich. There was proof he had been absent from Paducah, Ky., for

several years, but there was entire absence of proof as to the insured's disappearance from Detroit. Equitable Life Assurance Society v. Sieg, 74 F.(2d) 606 (C.C.A. Sixth Circuit).

In the case of Penn Mut. Life Insurance Company v. Tilton, 84 F.(2d) 10, 13 (C.C.A. Tenth Circuit), the court stated the the rule of presumption of death from seven years unexplained absence as follows: "The presumption of death from unexplained absence is a familiar doctrine. In the absence of a controlling statute providing otherwise, it is presumed in law that a person continues to live seven years after his unexplained disappearance, and, if he is not seen alive and his relatives, associates, or friends with whom he would naturally communicate receive no word from him, the presumption of life terminates at the end of such period and that of death arises."

In the case of Modern Woodmen of America v. Michelin, 101 Okl. 217, 225 P. 163, 167, 36 A.L.R. 971, the court said: "Should the mother have made more diligent search for her son? The result in this case is only mercenary, and it is worth the same number of dollars to the company as to the plaintiff that the insured be located. With knowledge of all facts which the mother had, and knowing this suit was to be filed, the company refused to make search. In its reply brief, and as reason for not making search, the company says: 'We have located the insured in numerous cases such as this, but can no longer attempt to do so, and did not make such attempt in this case, because the cost is prohibitive when intrusted to agencies which specialize in such work.'"

█ The policy sued on in this action provides for the payment of $2,500 in case of death from ordinary causes, and $5,000 for death resulting from accidental causes. The presumption is as strong, if not stronger, that the deceased died from ordinary causes as from accidental ones. There is no showing that the insured was engaged in a dangerous or hazardous occupation or that he was last known to be in a place where death would probably result from an accident. The recovery will, therefore, be limited to $2,500.

The motion of the plaintiff for a new trial will be granted, and the judgment heretofore entered in this action set aside. Judgment for the plaintiff will be entered in accordance with this opinion.