## Penick v. Metropolitan Life Insurance Company.

(Decided May 18,˙1926.)

(Rehearing Denied, with Modification, June 24, 1927.)

### Appeal from Daviess Circuit Court.

1. Evidence.—Physicians, acting for several years as medical examiners for life insurance companies, are qualified to express an expert opinion as to whether in accordance with custom usually prevailing among life insurance companies the particular applicant would have been accepted if representations had been substantially true.

2. Insurance.—Representation in life insurance application, though innocently made, will avoid policy, if it be both false and material.

3. Insurance.—Burden of proving that representation in life insurance application is both false and material is on insurer.

4. Insurance.—Where reputable physician testifies that he examined insured and found him suffering from disease which insured denied having in his life insurance application, there is nothing on queston of falsity to submit to jury, unless physician is impeached or contradicted.

5. Insurance.—Where evidence was in conflict as to whether insured's statement in application that he had not had heart disease or diabetes was false, a peremptory instruction in favor of the company on such issue was improper.

6. Insurance.—False statement that applicant for life insurance had not been treated by physician is not as a matter of law so material as to avoid policy in all cases.

7. Insurance.—Where evidence offered by beneficiary of life insurance policy, if true, shows that physician's diagnosis of high blood pressure was incorrect, question is for jury, and not for court.

8. Witnesses.—In action on life policy, testimony by beneficiary that insured husband worked in glass factory referred to something done by deceased, and was incompetent, under Civil Code

of Practice, section 606, subd. 2, prohibiting person testifying for himself concerning act done by deceased.

9.  Witnesses.—In action on life policy, testimony by beneficiary that insured husband was strong referred to impression or information derived from conduct, condition, or language of husband, which was transaction with husband, and incompetent, under Civil Code of Practice, section 606, subd. 2, prohibiting person testifying for himself concerning transaction with or act done by deceased.

10.  Trial.—Admission of incompetent testimony by beneficiary, suing on life policy, as to acts done by and transactions with insured, prohibited by Civil Code of Practice, section 606, subd. 2, did not authorize peremptory instruction for insurer, without giving beneficiary opportunity to supply evidence by competent testimony.

11.  Trial.—Where witness is permitted to testify, peremptory instruction cannot be sustained on ground that witness is incompetent, without giving party offering witness opportunity to supply evidence by competent witness.

E. B. ANDERSON for appellant.

FLOYD J. LASWELL, MILLER & ROWE and W. J. TULLY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On April 1, 1921, the Metropolitan Life Insurance Company issued to Moses P. Penick a policy insuring his life in the sum of $500. Penick died on September 30, 1921, and his wife, Ida B. Penick, who was named as beneficiary, brought suit to recover on the policy. The company defended on the ground that the policy was obtained by false, material, and fraudulent representations. At the conclusion of the evidence the court directed a verdict in favor of the company. Plaintiff appeals.

In his application, which was attached to and made a part of the policy, the assured stated that he had never had disease of the heart, diabetes, or disease of the kidneys, and that he was in sound health; that the last physician who attended him was Dr. McKinney, who treated him for slow fever in the year 1901; that he had not been under the care of any physician within two years prior to April 1, 1921; and that he had stated every case when he consulted or received treatment from a doctor at his office or elsewhere. Dr. O. C. Campbell of Ford City, Pa., deposed that he was the physician who examined Penick and made the report to the company. Penick was asked the questions contained in the application and

made the answers therein stated. In making his report he relied on the statements and answers. Had Penick disclosed that during the months of May, June, and July, or about that time, he had been under the treatment of a physician for blood pressure of 210, which was afterwards reduced to 120, these facts would have been recorded on the application, and his report on the application would have been unfavorable and so written. The report would then have been submitted to the Metropolitan Life Insurance Company for final disposition. A high blood pressure shows or indicates a physical or pathological disturbance in a patient having the same. His report, which was made a part of his deposition, and read to the jury, stated that the assured's heart action was uniformly free and steady; that its sound and rhythm was regular and normal; that there was no indication of disease of that organ, or of the blood vessels; that he tested the urine and found its specific gravity was 1.018, color amber, no sugar, and he recommended the application as a first class risk.

Dr. E. C. Winters, a physician of Ford City, Pa., testified that he knew the assured for four years and was his regular attending physician. He attended the assured on May 5, 1920, and treated him thereafter once a week for five months for hypertension. The assured's blood pressure on May 5, 1920, was 210, and prior to April 1, 1921, he explained to assured the condition of his blood pressure and told him it would be necessary to diet and attempt to reduce his weight. He found nothing else the matter with the assured and made no further explanation to him. Early in July, 1921, he began treating the assured for myocarditis and also for diabetes, and continued the treatment at intervals until his death. On September 30, 1921, assured had an acute attack of myocarditis which lasted for half a day and from which he died. Prior to April 1, 1921, he never treated the assured for anything but hypertension. Prior to that date his urine was negative and his heart action was also negative. The death certificate attached to Dr. Winters' deposition stated that myocarditis was the chief cause of assured's death, and diabetes a contributing or secondary cause, and that the maker of the certificate attended the assured during the months of May, June, and July in the year 1920.

W. S. Franklin, manager of the Metropolitan Life Insurance Company at Owensboro, Ky., testified that he

was familiar with the custom of rejecting and accepting policies by the Metropolitan Life Insurance Company, and that the company would not accept an application or issue a policy where the attending physician made an unfavorable report on the applicant. Dr. J. T. Dixon, who was medical examiner for other insurance companies, was unable to state what the custom was among insurance companies generally in accepting or rejecting an application where the assured disclosed that he had been treated for blood pressure of 210 once a week for five months and the pressure had been reduced to 120. He himself would not rate the risk as first class with such high blood pressure. Pressure of 210 was a symptom of something wrong. It may be seriously wrong, or it may indicate something that is transient and will pass away.

Dr. R. L. Schroeder, who had had several years' experience as medical examiner for a number of insurance companies, testified that it was a general custom of every company with which he was familiar to reject all applicants whose blood pressure was over 160. If a man ever had a high blood pressure of 210 that would be indicative that there was some undermining in his general health and would make him an unfavorable risk. It was the custom to inquire very rigidly into the past health of the applicant and that would include the history of blood pressure. Dr. E. B. McCormick, who had also had several years' experience in examining applicants for insurance, testified that when the examining physician reported unfavorably on the applicant it was the custom of the company usually to reject the applicant. Where the applicant's blood pressure was 210, and he was treated therefor for about five months, and the blood pressure was afterwards reduced, it was necessary for the company to know it, because that indicated there was something behind it. There was some illness in some way. In his opinion, a man who had diabetes or blood pressure of 210 would not be able to do heavy work or a man's labor. Drs. Dixon, Schroeder, and McCormick also testified on cross-examination that, if the statements made by the examining physician, Dr. Campbell, with reference to applicant's heart action and urine test, were true, the assured, in their opinion, was not suffering from myocarditis or diabetes when the examination was made.

According to appellant, her husband worked in a glass factory, was a strong man, and with the exception

of holidays, never missed any time from his work prior to April 1, 1921. No physician ever attended him at their home, and he was never under the care of a physician, so far as she knew. In the year 1920 she was with her husband from March until September, and during that time he never appeared to be sick. Drs. Hoover and Rash testified that, if the statements contained in Dr. Campbell's report to the company were true, applicant did not, in their opinion, have at that time either myocarditis or diabetes.

It is first insisted that only those who are engaged in the actual business of passing upon the desirability of insurance risk are qualified to testify as to the practice of insurance companies in accepting or rejecting applications, and that the local physicians were not competent witnesses. This question was fully considered in the recent case of New York Life Insurance Co. v. Long, 211 Ky. 656, 277 S. W. 978; and the rule was announced that physicians who had been acting for several years as medical examiners for life insurance companies were qualified to express an expert opinion as to whether, in accordance with the custom usually prevailing among those engaged in life insurance business, the particular applicant would have been accepted if his representations had been substantially true.

Under our rule a representation in an application, though innocently made, will avoid the policy if it be both false and material. New York Life Insurance Co. v. Long, 199 Ky. 133, 250 S. W. 812. The burden of proof is on the company, and, where a reputable physician testifies that he examined the insured and found him to be suffering from a particular disease, there is nothing on the question of falsity to submit to the jury, unless he is impeached or contradicted by other evidence.

There is little, if any, evidence that the insured was suffering from heart disease or diabetes prior to his application and his examination by the company's physician. On the contrary, the report of the examining physician shows that the condition of the insured was then normal, and supports the statements contained in the application. Therefore, on the question of the falsity of the statements that the insured had not had heart disease or diabetes, the evidence, to say the least, is conflicting and such as to have made the peremptory instruction improper. That being true, the propriety of the court's action in awarding the peremptory depends

upon the falsity and materiality of the statement that the insured, except in one instance, had not been treated by a physician.

The experts do not go so far as to say that it was the practice among insurance companies to reject an applicant, regardless of the disease or cause for which he was treated, who falsely stated that he had not theretofore been examined by a physician. An applicant may have been treated for a cold or a slight burn or cut, in which event the false statement that he had not been treated by a physician would be wholly immaterial. For this reason we are not prepared, in the absence of uncontradicted evidence to that effect, to hold as a matter of law that in all cases a false statement that the applicant had not been treated by a physician is so material as to avoid the policy. Therefore the propriety of the court's action in awarding the peremptory turns on whether there is any contradiction of Dr. Winters' evidence that he had treated the insured for high blood pressure. It may be admitted that appellant's evidence that her husband was not treated by a physician, so far as she knew, was not sufficient to make an issue, but the evidence does not stop there. She also testified that her husband was a strong man, worked regularly in a glass factory, and never missed any time from his work, except on holidays. Dr. McCormick testified that a man could not do heavy work or a man's labor who had blood pressure of 210. In addition to this, the report of the company's physician indicated a normal condition of the applicant at the time of the examination, and therefore an absence of high blood pressure. In a case like this where the beneficiary is deprived of the evidence of the insured, it is not always practicable to contradict a physician who had examined him prior to his application by evidence of experts. In many instances all that the beneficiary can do is to offer evidence of facts and circumstances which tend, if true, to show that the physician's diagnosis was incorrect, and where this is done the question is for the jury, and not for the courts.

But the point is made that appellant's evidence, which was admitted over the objection of appellee, should have been excluded, and, had this been done, the evidence was not sufficient to take the case to the jury. Subsection 2, section 606, Civ. Code Prac., provides that, with certain exceptions not here material, no person shall testify for himself concerning any verbal statement of,

or any transaction with, or any act done or omitted to be done by, one who is dead when the testimony is offered to be given. When appellant testified that her husband worked in a glass factory, she testified to something done by him. When she testified that he was strong, she testified to an impression or information derived from the conduct, condition, or language of her husband, and this was a transaction with her husband, within the meaning of the Code. Barnett's Adm'r v. Brand, 165 Ky. 616, 177 S. W. 461.

Hence, she was not a competent witness with respect to the matters in question. It does not follow, however, that because her evidence was improperly admitted the peremptory instruction was proper. Though a witness may not be competent to testify on a particular subject, the party offering the witness may be able to prove the same facts by a competent witness. It would be a manifest injustice therefore to permit a witness to testify, and then sustain a peremptory on the ground of incompetency, without giving the party offering the witness an opportunity to supply the evidence by a competent witness. We are therefore of the opinion that the propriety of the court's action in awarding a peremptory in the circumstances here presented depends on the evidence actually admitted, and not on the evidence that should have been admitted. Applying this rule to the facts of this case we conclude that on the showing made the company was not entitled to a peremptory instruction.

Judgment reversed and cause remanded for a new trial consistent with this opinion.