## Etter v. National Life & Accident Insurance Company.

(Decided March 12, 1929.)

400

W. A. BERRY for appellant.

C. C. GRASSHAM and L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On May 11, 1927, the National Life & Accident Insurance Company issued a policy insuring the life of Bessie Marshall Smith in favor of her sister, Jeanette Etter, in the sum of $1,000. On August 11, 1927, and while the policy was in force, the insured died, and payment having been refused this suit followed. At the conclusion of the company's evidence, the court directed a verdict in its favor. The beneficiary appeals.

In addition to other defenses, the company interposed the defense that in her application, which was attached to and made part of the policy, the insured made false answers to certain questions that were material to the risk. The application discloses that in reply to the question whether insured had ever had any ailment or disease of the brain or nervous system, heart or lungs, skin, middle ear or eyes, or had ever had rheumatism, gout, etc., or had ever raised or spat blood, she answered, "No." She was then asked if she had ever consulted a physician for any ailment or disease not included in the above, and answered, "No." She was also asked to state the names and addresses of physicians she had ever consulted, and to give the occasion by reference to question numbers and letters above, and answered, "None since childhood." The proof of death was signed by the beneficiary and by Dr. Frank M. Keiser. Dr. Keiser deposed that the insured died from cancer of the uterus of six months' standing, and that she had a cancer at the time of his first visit, which was about four months before she died. The evidence further discloses that the insured was in the hospital from July 10, 1926, to July 27, 1926, and that she was suffering at the time from pelvic infection, and was treated therefor by a physician. There is further evidence that after the insured left the hospital in 1926, she was up and around, but was not able to do much

work and complained of a pain in her side. C. E. Orndorf, the company's manager in Western Kentucky, testified that he had been connected with the National Life & Accident Insurance Company for about 25 years. He was familiar with the rules of insurance companies governing the issual of insurance policies, and that, if the truth in regard to insured had been stated, no insurance company in the usual course of business would have issued the policy. On cross-examination witness stated that he had never worked for any other company than the National Life & Accident Insurance Company, and had never been in the office of any other company. He then said he would withdraw what he had said about other companies and tell counsel what the National Life & Accident Insurance Company does. On redirect examination he stated the same rules of procedure which govern his company govern other companies, and that was what his answer was based on. He further stated that in the course of business he had come in contact with other insurance company representatives, and had discussed such matters with them and had read insurance magazines and publications.

The principal ground on which a reversal is asked is that Orndorf, the company's manager in Western Kentucky, did not show himself qualified to testify concerning the usual practice of other insurance companies. Under our law a false and material answer will avoid the policy, and a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of life insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated. Blenke v. Citizens' Life Insurance Co., 145 Ky. 332, 140 S. W. 561. We have rejected the rule that only those who are engaged in the actual business of passing on insurance risks are qualified to testify as to the practice of insurance companies in accepting or rejecting applications, and have held that local physicians who have acted as medical examiners for several insurance companies were competent witnesses. Penick v. Metropolitan Life Insurance Co., 220 Ky. 626, 295 S. W. 900; New York Life Insurance Co. v. Long, 211 Ky. 656, 277 S. W. 978. In view of the fact that, in the course of his business, the local agent or manager necessarily becomes acquainted with the grounds on which applications are rejected, he is competent to testify concerning the usual practice of the company he represents.

If he has represented several companies, he may testify to the usual practice of each. Security Benefit Association v. Kibby, 220 Ky. 330, 295 S. W. 164. Doubtless, too, the usual practice of insurance companies generally may be established by two or more insurance agents, each testifying as to the usual practice of the company he represents. However, we are not inclined to the view that a local agent or manager, who has never worked for any other company, and whose only information is derived from conversations with representatives of other companies, and from reading insurance magazines, is qualified to testify concerning the usual practice of insurance companies other than the one he represents. It follows that appellant's objection to the evidence of Orndorf, in so far as it related to the usual practice of other insurance companies, should have been sustained. As the burden of showing that the representation was both false and material was on the company (Penick v. Metropolitan Life Ins. Co., supra), and it failed to show the materiality of the representation by a witness competent to speak on the subject, it follows that appellee was not entitled to a peremptory on the ground that the representation was both false and material.

But the point is made that appellee was entitled to a peremptory on the ground that the policy contained the following provision: "This policy shall not take effect until the first premium thereon shall have been actually paid, and the policy actually delivered to the insured during the lifetime and good health of the insured"—and that the uncontradicted evidence shows that the insured was not in good or sound health when the policy was delivered. Though the point seems to have been overlooked in the cases of Western & Southern Life Ins. Co. v. Weber, 183 Ky. 32, 209 S. W. 716, and Life & Casualty Co. of Tenn. v. Hendon, 209 Ky. 771, 273 S. W. 469, it has long been the settled rule in this state that the condition in a life policy that it is not binding, unless on the date of delivery the insured is in sound health, applies only to unsoundness of health arising after the application and medical examination, and that, unless it is shown that the unsoundness of health occurred between the application and medical examination and the delivery of the policy, the company must rely on the statements in the application to avoid a recovery, and not on the conditions in the policy. Metropolitan Life Ins. Co. v. Moore, 117 Ky. 651, 79 S. W. 219, 25 Ky. Law Rep. 1613, 1748; Western

& Southern Life Ins. Co. v. Davis, 141 Ky. 360, 132 S. W. 410; Modern Woodmen of America v. Atkinson, 153 Ky. 527, 155 S. W. 1135; Metropolitan Life Ins. Co. v. Walters, 215 Ky. 379, 285 S. W. 252; National Life & Accident Ins. Co. v. Wallace, 217 Ky. 160, 289 S. W. 219; Metropolitan Life Ins. Co. v. Taylor's Adm'r, 219 Ky. 549, 293 S. W. 1061. Here there was a medical examination, and there was no attempt on the part of the company to show that the unsoundness of health occurred after that time. It results that appellee was not entitled to a peremptory instruction on the ground that the insured was not in good health at the time the policy was delivered.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.