## Sovereign Camp W. O. W. v. McDaniel.

(Decided Nov. 9, 1933.)

T. W. CRAWFORD, J. H. COLEMAN, RAINEY T. WELLS and J. C. SPEIGHT for appellant.

RICHARD H. HOOD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On October 27, 1930, the Sovereign Camp of the Woodmen of the World issued a certificate based on a medical examination made on October 11, 1930, insuring the life of William B. Hay in favor of his daughter, Carrie McDaniel. Hay died on May 19, 1931. Liability having been denied, this suit was brought to recover on the policy. The insurer defended on the ground that the answers to certain questions asked in the application were untrue and material to the risk. It developed on the hearing that the insured misstated his age, and by reason thereof the beneficiary was entitled to recover only $861.66. The only witnesses heard were introduced by the insurer, which assumed the burden of proof. At the conclusion of the evidence the trial court directed the jury to return a verdict in favor of the beneficiary for $861.60. The appeal challenges the correctness of this ruling.

It appears from the application and the evidence of the examining physician that the insured answered "No" to the following question: "Has the applicant now or ever had syphilis, enlarged prostate, nephritis, or other disease of the genitourinary organs?" and "Yes" to the question, "Are you now in good health?" and it is these answers that are claimed to be untrue and material to the risk.

Dr. J. A. Outland, who had for 20 years been the examining physician for the Woodmen of the World in Calloway county, examined the insured on October 11, 1930, and testified as follows: He had known the insured for about 20 years and had seen him on an average of once a week. On the occasion in question he took his temperature, pulse rate, and his urine for sugar and acid, and sent a specimen of the urine to the company. He made the examination for the purpose of determining whether the insured was in good health. He stated in his own handwriting on the application that the risk was first class. On redirect examination the witness was then asked the following question:

"Q. This hypothetical question: This examination made by you was on the 11th, of October, 1930; if within a short time, on November 5th, it developed that upon an examination that this man had what is called aortitis, and had shortness of breath, and swelling of the limbs, would you think that would indicate that he

was in good or bad health at the time this examination was made?'' and his answer was ''I would say he was in good health if it was a correct diagnosis.'' After stating that he knew what the Wasserman test was, he was asked the following question:

> ''If the Wasserman test was made on November 11th, where the examination was made on the 5th, and it showed a syphilitic condition, plus four, what would you say as to his being in good or ill health at the time this examination was made? A. I know all cases, as far as the patient knows, they will be in good health, but still we know the germ was in the blood if the Wasserman test was correctly made.''

On recross examination witness testified in substance that one Wasserman test would not conclusively show that syphilis was the producing cause of aortitis. He further defined the Wasserman test and said that its effectiveness turned on the way it was made and who made it. According to Dr. E. B. Houston, the insured visited him during the first days of September, and he prescribed for a cough that the insured had. He did not see the insured any more until November 5th. On that occasion his symptoms, or rather the one symptom he had prescribed for, had not yielded, and that was the cough. Neither had other symptoms that demanded other examinations, as he thought. He had shortness of breath and possibly swelling of the feet and ankles, and his cough was possibly more aggravated. Then he made a thorough examination. The remainder of his direct examination is as follows:

> ''Will you state to the jury when you made this examination, and took a blood test, according to your examination from your diagnosis, what was his condition? A. My experience had taught me that with the symptoms he had then, and with the cardiac heart inflammation, that I probably had a syphilitic patient; I procured a specimen of blood at that time, and the report was made to me about the 12th of November.

> ''Q. You had another examination made? A. Yes, sir.

> ''Q. You were not present at that examination? A. No, sir.

"Q. You may state what the examination showed.

"By Mr. Hood: We object.

"By The Court: Sustained." To which ruling of the court counsel for defendant then and there duly excepted.

"Q. In arriving at your conclusion at that time, not having the blood test made, upon what symptoms did you base your diagnosis? A. On the physical signs, what I could elicit from the condition of the heart, and also on the blood test that I made, syphilitic aortitis.

"Q. You say at this time his cough condition seemed to have become aggravated? A. Yes, sir.

"Q. How long did you continue to treat him? A. Until he died; I think that was the last days of April, 1931.

"Q. These symptoms that you have described upon which you based your diagnosis as of November 5th, state to the jury whether, or not, these became more or less pronounced? A. They became more pronounced.

"Q. Could you state from what you knew about the case what were the prevailing causes of this man's death? A. We usually answer that in about two questions in filling out the application; the immediate cause of death was organic heart disease, and, of course, from the symptoms, I would say from his syphilitic condition in years previous.

"Q. The immediate cause of death was superinduced by these remote causes? A. Yes, sir.

"Q. Knowing that case as you came to know it, state whether, or not, in your opinion, on October 27th, 1930, Mr. Hay was a well man, in good physical condition?

"By Mr. Hood: We object.

"By The Court: Overruled." To which ruling of the court counsel for plaintiff then and there duly excepted.

"A. Well, it would only be an opinion. He could not have gotten into three stages of syphilis at that time, even if he had infections on that day; he had to have a blood stream infection at that time, and previously."

On cross-examination, witness stated that he had signed his death certificate and that he gave aortitis as the cause of his death, that aortitis did not necessarily result from syphilitic infection. Whatever report he made, as far as syphilis was concerned, was not based on laboratory examination, was not based on any personal examination of his own except as a matter of his general physical condition. In his opinion aortitis caused the death of the insured. He had treated cases of aortitis that were not the result of syphilis. In the death certificate which he prepared he stated that the aortitis was complicated with lues, and did not know the duration.

Dr. John T. Yates, appellant's secretary, testified that if he had known that any of the statements, answers, and representations made in the application were in fact untrue, he would not have issued said beneficiary certificate. Dr. A. D. Cloyd, medical director of the Sovereign Camp of the Woodmen of the World, testified that he would not accept the application of any applicant for a beneficiary certificate whom he knew to be suffering from a cough, shortness of breath, loss of weight, and swelling of the feet and ankles, and whom he knew to have a four plus Wasserman reaction.

Under our statute all statements or descriptions in any application for a policy of insurance are representations and not warranties, and no misrepresentations, unless material or fraudulent, will prevent a recovery on the policy. Kentucky Statutes, sec. 639. Knights of Maccabees v. Shields, 156 Ky. 270, 160 S. W. 1043, 49 L. R. A. (N. S.) 853. The statute has been interpreted as defeating a recovery on the policy where the insured makes false and material answers. Here the contention is that the foregoing answers to the questions propounded to the insured were both false and material, and the question is, Was there sufficient evidence of their falsity and materiality to take the case to the jury? On a consideration of this question we start with the evidence of Dr. Outland, the company's physician, who made a personal examination of the insured, and after subjecting him to certain tests pronounced him a first class risk, and gave no opinion that the insured was in unsound health on October 11, 1930, the day of the examination, except to imply that the syphilitic germ was in his blood if the Wasserman test was

correctly made. Following this evidence we have the evidence of Dr. Houston that the insured visited him in the month of September, and that he treated the insured for a cough, but there is no evidence whatever that a mere cough was material to the risk. It is true that on November 11th, witness claimed to have had the Wasserman test applied to the insured, but as this test was made by another, and not in the presence of the witness, and the person making the test did not testify, the court properly refused to permit the witness to testify as to the result of the test as reported to him. That being true there was no evidence as to the application or the result of the Wasserman test. Looking at the evidence of Dr. Houston as a whole, it is apparent that he gave no opinion based on other symptoms alone that the insured had the syphilis on the date of the medical examination, but that whatever opinion he expressed was based on the Wasserman test which had been excluded from the consideration of the jury. Not only so, but the materiality of the answers was not properly proved. The rule is that a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of life insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated. Blenke v. Citizens' Life Ins. Co., 145 Ky. 332, 140 S. W. 561. Here neither appellant's secretary, nor its medical director, testified as to the usual practice of other insurance companies in accepting or rejecting applications. All that we have is that their particular company would not have issued the certificate if they had known that the applicant was suffering from a cough, shortness of breath, loss of weight, and swelling of the feet and ankles, and had a four plus Wasserman reaction. Clearly this was not sufficient to show that the answers, even if false, were material to the risk. Etter v. National Life & Accident Ins. Co., 228 Ky. 399, 15 S. W. (2d) 242. As the evidence was not sufficient to show either the falsity or the materiality of the statements contained in the application, there is no escape from the conclusion that the court did not err in refusing to submit these questions to the jury.

Jugdment affirmed.