## John Hancock Mutual Life Insurance Co. v. DeWitt.

(Decided May 10, 1935.)

WM. MARSHALL BULLITT, ROBT. LEE BLACKWELL and BRUCE & BULLITT for appellant.

EUGENE MOSLEY, Jr., for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellee, Mrs. Artie DeWitt, brought this suit against the appellant, John Hancock Mutual Life Insurance Company, to recover on a policy for $1,000 issued her daughter, Margaret DeWitt, and wherein she was named beneficiary.

It is disclosed by the record that about the 1st of May, 1931, a solicitor or agent of the company in Louisville, Ky., Malcolm Young, who had for several months sought to have Mrs. DeWitt take out a life policy upon her fifteen year old daughter, Margaret, called at their home in Louisville and procured Margaret's application for a $1,000 nonmedical policy, which was issued and delivered her about the middle of that month. Among the questions submitted in the application made for the policy, the insured was asked if she had ever been treated for consumption; if she had ever, within the past five years, had medical advice for any other disease or disorder than those enumerated, including consumption, as to which specifically interrogated, and if she had made a normal gain in weight during the past two years. It was therein also expressly agreed and stipulated that the statements and answers made in the application formed the basis of the contract of insurance and were true, and, further, that if payment of the premium was not made with the application, that any policy which might be issued thereon should take effect only if the insured had received no medical treatment since the date of making application and then only in the event that the policy should be delivered and received by the insured and the first premium paid thereon when the insured was in sound health. The policy was issued and delivered on the application about the middle of May following.

On July 23, 1931, following, the insured, Margaret DeWitt, was examined at the Waverly Hills tubercular clinic by Dr. Miller, who designated her then condition as pulmonary tuberculosis. On August 3, 1931, the insured was received at the Waverly Hills Tuberculosis Sanitarium, where she died on January 21, 1932, from tuberculosis.

Thereafter, the appellant having refused to pay the claim made upon the policy by the beneficiary, Mrs. DeWitt, she brought this action in the common pleas branch of the Jefferson circuit court against the com-

pany to recover the face amount of the policy ($1,000.00) for which, upon trial, a judgment was rendered in her favor. Complaining of this judgment, the company has appealed, assigning as grounds for its reversal that the trial court erred (1) in refusing to give the peremptory instruction it moved for; (2) in refusing to give the instructions offered by the company and in giving, upon its own motion, instruction No. 1; and (3) that the verdict is flagrantly against the evidence.

For a proper consideration of these grounds urged for reversal of the judgment, we deem it needful to here give a brief analysis of the evidence.

By this, it appears that the insured, Margaret De-Witt, was, at the time of making application for the policy here involved, apparently a healthy, athletic young girl, some fifteen years of age, and a student in regular attendance at the Louisville High School. In March, 1930, she, with the other students of the school, had (pursuant to a requirement of the city board of education) submitted to a thorough health examination conducted by Dr. Miller. The result of this examination showed that Margaret was then in good health and free from all symptoms of tuberculosis, the tests made of her therefor showing entirely negative results.

Further it appears that Margaret and her mother, Mrs. Artie DeWitt, had some four years before moved from Lawrenceburg, Ky., to Louisville, where they have since lived, Margaret having been during this period in regular attendance at school and her mother employed. Both enjoyed good health until March, 1931, when Margaret had influenza, which confined her for about a week and left her for awhile somewhat lessened in weight, with some hoarseness and a cold, but none of which were considered to be of such gravity as to prevent her re-entering school and resuming her regular school work and student activities.

Such condition appears to have continued until about the 1st of May, when, notwithstanding her apparent recovery from her "flu" attack of the previous March, some weakness and a bad cold lingered, leading her mother to take her to their family physician, Dr. Johnson, for consultation. Upon this visit, made on the evening of May 4, 5, or 6, 1931 (the exact date being in dispute), Dr. Johnson examined Margaret. He

states that he then formed no conclusion from his examination made as to whether her condition of health was serious, but that he did suggest that she go to Dr. Miller's tubercular clinic for an examination of her chest, because of his finding that she then had a little temperature, rales in her chest, and had been losing a little weight since her "flu" attack, which symptoms indicated to him that she either then had a terrifically bad cold, which had lasted for some two months, or that she had at that time "the beginning of tuberculosis." He did not recall whether he had advised that she stop school and go to bed, but testified that he would under such circumstances have naturally advised any one found running a temperature to go to bed and rest, regardless of what caused such condition. The witness further stated that he could not definitely recall the time of her visit, as he had made no record of this examination of Margaret, as it was made after his night office hours, but recalled that he had advised that if she did not improve within a few days, she should have a clinical examination made of her chest by a specialist in pulmonary diseases, even though he hardly thought, at that time, that Margaret had tuberculosis, but sent her to Dr. Miller "for confirmation—for an X-ray plate and also an X-ray examination and test."

Pursuant to his instruction, it appears admitted that Margaret stopped school on the following day, May 6, and that later, on July 23, she was taken to the Waverly Clinic for the advised examination, where she gave a history of her case and was examined by Dr. Miller's assistant, who made an X-ray of her chest, which Dr. Miller read, in connection with the history given of her case, as showing pulmonary tuberculosis then "moderately advanced though not chronic."

The history of the case, as given by Margaret at the clinic, shows the above recited facts as to the beginning of her illness on March 31, 1931, with influenza, followed by loss of weight, a cough, a tired feeling, and some loss of strength; that her appetite and digestion were good; had no soreness of throat, hoarseness, shortness of breath, night sweats, nor expectoration. Further, Dr. Miller stated that in his opinion "Margaret's health was first impaired in May, 1931, with tuberculosis"; that such opinion was based, not on his physical examination made of her, but on the history

of the case, reciting "that the girl said she had had influenza in March, 1931, had been in bed a week, had stopped work in May, 1931, and was not feeling well." Also, he stated that "there was no way the girl could have known that she had tuberculosis in the first part of May," when applying for the policy, "unless it was told her by her physician."

The further testimony of many of Margaret's kin and friends, who were called as witnesses by the defendant, was that Margaret was, throughout the period of her life in Louisville—while a student of the city high school and up until after making the insurance application in May, 1931, here involved—apparently always in fine health, normally interested in sports and other activities usually attractive to normal, healthy girls, and that, except for the week's period of her influenza attack in March, 1931, she was thought by all of them, from her appearance and lively conduct, to be a normal and healthy girl.

At the conclusion of this evidence, appellant contends it was entitled to have its motion for a peremptory instruction sustained.

It will be noticed that by this expert evidence of both Dr. Johnson and Dr. Miller it is shown that the insured's condition, when answering the questions contained in the application, was one where she may, rather than must, have been then affected with incipient consumption and of which she could not have known unless told by her phyician, of which there is no evidence, nor is it shown that she even suspected it at the time of making application for this policy about May 4 or 5, 1931. Even if she were then so affected, there is no evidence tending to show that the insured then knew either that such was her then condition or even when taken to Dr. Johnson's office that it was for consulting with him or receiving treatment for any suspected tubercular trouble or for any disease or serious disorder threatening, but only for advice as to her persistent cold—which had been attended with some loss of weight and weakness.

Under the circumstances shown by this evidence, her answer, "Yes," made to question 26 of the application, "Are you now in good health so far as you know or believe?" may well have been both substan-

tially true and well given in good faith. Few persons can answer with absolute certainty that they are in perfect health at the time of inquiry, though they might be able to say with entire truth that they were in such state of health so far as they knew or believed, as, whether one is in perfect health or not is often a matter of opinion or belief on his part, unless it be that he has been advised concerning it or has consulted physicians about it. "A very different situation is presented when the applicant is asked [as was done here] a question involving an act done by him * * * concerning which he must have had personal knowledge * * * or a thing that transpired in which he was a participant, and that he must be charged with knowledge of. For instance, * * * [had he] previously been examined by or consulted physicians in reference to his health" or had medical advice in any disease or disorder. Blenke v. Citizens' Life Insurance Co., 145 Ky. 332, 140 S. W. 561, 564.

In the instant case, such latter question as to whether or not the insured had received, within the past five years, medical advice for any disease or disorder was asked her, to which she answered, "No." Also, it is further expressly stipulated in the application that should the insured, during the intervening period between applying for the policy and later receiving it, have received any medical treatment, in such event the policy delivered should not take effect, unless the premium was paid thereon when applying for it (which is expressly stated by the insured in the application not to have been so paid).

From this it follows, inasmuch as it is admitted that the insured was examined by Dr. Johnson (for her then condition of a bad cold and unfavorable symptoms) either just before or just after making her application about May 4th, for the policy involved, that one or the other of her representations made, that she had received no medical advice within five years of making the application and had received none thereafter before the delivery of the policy to her, must needs have been untrue.

Such being the case, our next inquiry becomes, Was such misrepresentation material or fraudulently made?

Section 639, Ky. Stats., provides:

"All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy."

Construing this statutory provision, in U. S. Casualty Co. v. Campbell, 148 Ky. 554, 146 S. W. 1121, we held the difference between warranties and representations as used in this section to be that warranties must be literally true, while representations need only be substantially true.

Also, in Provident Savings Life Assurance Co. v. Whayne's Adm'r, 131 Ky. 84, 93 S. W. 1049, 29 Ky. Law Rep. 160, we held that provisions in a life policy that representations in the application are warranties are void, being in violation of section 639, Kentucky Statutes, providing that all statements in any application for insurance shall be deemed representations and not warranties, and no misrepresentation, unless material or fraudulent, shall prevent recovery on the policy; and, further, that a representation made in an application which is false and material to the risk will avoid the policy, whether unintentionally or innocently made, the element of fraud on the part of the applicant being unnecessary to render the representations material (New York Life Insurance Co. v. Long, 199 Ky. 133, 250 S. W. 812) and that the test as to whether a misstatement or misrepresentation is material is to be determined by the usual practice in insurance business by which the false answer is held material, if insurer, acting reasonably and in accordance with its usual practice, would not have accepted the application if substantial truth had been stated. Commonwealth Life Insurance Co. v. Goodknight's Adm'r, 212 Ky. 763, 280 S. W. 123; Etter v. National Life & Accident Insurance Co., 228 Ky. 399, 15 S. W. (2d) 242. An insurer has the right to choose its risk, to set up its own standards, to ask questions of applicants, and to rely and act upon the answers as true, and does not have to insure all applicants or upon terms other than its own choosing, so long as the terms and conditions made therefor are not unreasonable or in violation of legal rules and requirements. Also, the relationship between insurer and the insured is one requiring the exercise by each of the uttermost good faith, for, as

said in Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 513, 72 L. Ed. 895: "Insurance policies are traditionally contracts uberrimæ fidei."

The evidence for the appellant as to the materiality of these misrepresentations here made (as to having received no medical advice or treatment either before or after making her application) is that, if true answers or representations had been made to such questions, showing the facts as to the circumstances and conditions under which such treatment or advice was sought and received by her, it, acting reasonably and in accordance with the usual practice among life insurance companies under similar circumstances, would not have accepted the risk.

Certainly not any and all advice or treatment received from a physician would be per se—or, regardless of its character, material to the company's risk in accepting an application for a policy, and in such cases where the substantial truth, if told as to such fact inquired of, would not materially affect its risk, such mistaken answers (where not fraudulent) would under the statute constitute merely misrepresentations rather than warranties and not avoid the policy.

We are of the opinion, therefore, that the instruction as given, in failing to submit to the jury the question as to whether or not the advice or treatment of the physician (here shown by the evidence to have been received by the insured either within five years before making the application or else, if had thereafter, it was before the delivery of the policy to her) was of a nature and kind not trivial but material to the risk or one, as to which, had the substantial truth been disclosed by the answer given the company, in accordance with the usual practice, etc., would not have issued the policy, and that in such event the jury should find for the defendant. We are of the opinion that the defendant was entitled to have this theory of its defense presented by an instruction, although not entitled thereto in the form of its offered instructions "c" or "d," by reason of their presenting too broadly such theory of its defense by denying a recovery thereunder, if either advice or treatment, of whatever character, had been received by the insured in the instances named, whether or not of such material character as to have determined the

228

company's issuance or refusal of the policy applied for, as under section 639, Kentucky Statutes, a misrepresentation by applicant of a fact not material to the risk, nor fraudulently made, should not avoid the policy.

However, having reached the conclusion requiring a reversal of the judgment upon the ground that we conceive the verdict was flagrantly against the evidence, we deem it unnecessary to further extend this opinion by a discussion and decision of the other assignments of error here made. They are reserved and the case remanded for a new trial consistent with this opinion.

Judgment reversed.