NATIONAL LIFE & ACCIDENT INS. CO. v. SCOTT.

Court of Appeals of Kentucky.
June 19, 1951.

Charles S. Adams, Covington, for appellant.

Clyde E. Vincent, Covington, for appellee.

CAMMACK, Chief Justice.

The appellee, Minnie Scott, is the beneficiary under a policy issued by the appellant, National Life & Accident Insurance Company, in the sum of $500 on the life of her deceased husband, Harvey L. Scott. The appellee filed suit to recover the proceeds. The appellant's answer set up in defense the "sound health" clause, false answers and material misrepresentations. The answer was traversed by a reply. This appeal is taken from a judgment entered on the jury's verdict for the appellee in the amount claimed.

The appellant urges three grounds for reversal: (1) it was entitled to a peremptory instruction; (2) the testimony of the appellee as to the insured's working and physical condition was incompetent; and (3) Instruction No. 2 on the "sound health" defense was erroneous and its Instruction A should have been given.

The insured applied for life insurance in the amount of $500 on March 11, 1947. The policy was of the industrial type, wherein no medical examination is ordinarily required. The following questions and answers appear on the face of the application:

"21. Are you in good health? Yes."

"23. What illness, injury or accident have you ever had? Give details. None."

The application was signed by the insured and tendered to the appellant, accompanied by the first premium. The policy was issued on March 24, 1947. It contained the following clause:

"(5) Effective Date. This policy shall take effect on the Date of Issue, provided the Insured is then alive and in sound health, but not otherwise."

The insured died on April 10, 1947.

The only testimony offered by the appellee was her own. She testified that she was present when application was made for the issuance of the policy, that the defendant's soliciting agent asked no questions of the insured as to his health and that she did not see the insured sign the application. She also stated that the insured had never said anything about going to a doctor and that when she married him in February, 1947, he did not complain of illness. She admitted that the insured could read and write.

Roy F. Sandmann, the soliciting agent, testified that he asked the insured the questions called for on the application, wrote up the answers given and that the insured signed in his presence. There was no medical examination. He also stated that no one else entered into the transaction with the insured and that the appellee was not present when the application was signed. He said the insured did not look sick at that time.

Ray Bready, who runs a shoe repair shop, testified that the insured helped out occasionally at the shoeshine stand for about six weeks, ending approximately a

month before the insured's death, that the insured said he didn't feel good and that on one occasion the insured left his work, saying he did not feel well. He stated that the insured's stomach looked rather large.

Dr. J. E. Randolph testified that he treated the insured on June 20, 1946, in his office. He found his patient normal, except that the insured's abdomen was positive and distended. It was barrel-shaped and full of fluid. His liver appeared to be hard upon percussion. He found no jaundice and no edema of the lower extremities. There was a marked *dystorea*, shortness of breath. He told the insured he should go to a hospital for further examination; and he testified that, in his opinion, surgery was indicated. Dr. Randolph saw the insured February 1, 1947, when the insured told him he wasn't doing well and that his condition was growing worse. Dr. Randolph again told the insured he should go to the hospital. The doctor gave as his opinion that the insured could not have been in good health on March 11, 1947, the date of the application for this insurance policy.

Major Frances Siffin, recording librarian at the Booth Memorial Hospital, read in evidence the hospital records showing what occurred immediately prior to the insured's death. The dismissal order showed: "* * * Admitted—April 10, 1947, Discharged—April 10, 1947, Final Diagnosis—Esophageal Varices, Complications—Hemorrhage, Result—Died, Dismissed April 10, 1947." The signature is C. M. Seamans, Resident Physician.

The progress notes stated: "* * * No history obtainable except from police who found patient following hemorrhage and had life saving squad bring patient to hospital immediately. Patient in extremis but not from hemorrhage as Blood Pressure was 140/110, Chest—coarse Ronchae over both lung fields, Diaphragm high on right side, Heart regular, Rate 100, Liver 8–10 centimeters below the costal margin. Spleen also enlarged and palpable for about 10 centimeters below the costal margin.

Extremisis not related, Impression, (1) Banti's Disease, (2) Atrophy of Liver?, (3) Esophageal Varices." This was initialed C. M. S. The Nurses' Record said the abdomen was greatly distended and later "* * * respiratory changed Cheyne-Stokes, appears to be dying. * * *"

■ The appellee should not have been permitted to testify concerning her deceased husband's physical condition or as to his apparent good health at the time of their marriage in February, 1947. Aetna Life Insurance Company of Hartford, Conn. v. Prater's Adm'x, 259 Ky. 665, 83 S.W.2d 17. However, the appellee was competent to testify as to events transpiring at the time of the making of the application for the policy. Metropolitan Life Insurance Company v. Trunick's Adm'r, 246 Ky. 240, 54 S.W.2d 917. She said that she was present when the application was made and that the soliciting agent asked no questions of her husband as to the condition of his health, and, further, that she did not see her husband sign the application. On the other hand, the soliciting agent said that he asked the insured the questions set out on the application, wrote the answers given to him and that the application was signed by the insured in his presence. He stated further that the appellee was not present at the time the application was filled out and signed.

■ Under the majority opinion in the case of Metropolitan Life Insurance Company v. Tannenbaum, Ky., 240 S.W.2d 566, which reaffirmed the opinion in the case of Connecticut Fire Insurance Company v. Roberts, 226 Ky. 534, 11 S.W.2d 148, it was error to submit the case to the jury. A majority of the Court now adheres to the same view. The minority view, as expressed in Judge Latimer's dissenting opinion in the Tannenbaum Case, is that: Whether or not truthful or false answers were made to the agent should be a question for the jury. According to the minority view, issue was made in the case before us by the testimony of the appellee and that of the soliciting agent

852

as to the truth or falsity of the answers on the application.

For the reasons expressed it is unnecessary to discuss other questions raised in the case.

A majority of the Court feels that the judgment should be and it is reversed, with directions to set it aside, and for proceedings consistent with this opinion.