Billie OSBORNE, Individually, and as Administrator of the Estate of Shirley Ann Osborne, Deceased; Martha McDaniel Moore, Kenneth Wayne Humphreys, Lora M. Moore, and Paul G. Hudgins, Plaintiffs-Appellants,

v.

AMERICAN SELECT RISK INSURANCE COMPANY, Defendant-Appellee,

and

Allstate Insurance Company, Intervenor.

No. 18689.

United States Court of Appeals Sixth Circuit.

July 31, 1969.

---

Harry E. Miller, Jr., Paducah, Ky., for appellants, Chas. A. Williams & Associates, Paducah, Ky., on brief.

William D. Grubbs, Louisville, Ky., for appellee; James G. Wheeler, Paducah, Ky., on brief, Woodward, Hobson &

Fulton, Louisville, Ky., and Wheeler & Marshall, Paducah, Ky., of counsel.

Before PHILLIPS, PECK and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This diversity action was brought by plaintiffs-appellants (hereinafter "plaintiffs") seeking recovery under an automobile liability insurance policy issued to Billie Osborne by the defendant-appellee (hereinafter "defendant").

Billie Osborne filled out an application for insurance on November 22, 1963, at the office of defendant's agent, the Wilson Insurance Agency, of Murray, Kentucky. The premium was paid that day and the contract involved coverage for a period of six months. The policy was issued on December 3, 1963, insuring both Billie Osborne and anyone driving the insured automobile with his permission.

On December 14, 1963, Shirley Osborne, Billie's wife, while driving the insured automobile with permission in Tennessee, negligently collided with an automobile in which Kenneth Humphreys, L. Yates Moore and Boyd Moore were passengers. The collision resulted in injury to Humphreys and in the death of both of the Moores and of Shirley Osborne. Notice of the accident was given to the defendant, but defendant notified Osborne in a letter of cancellation dated January 10, 1964, that it did not recognize any obligation or liability under the insurance policy since the policy was null and void from its inception.

Suits were subsequently filed in the state court of Tennessee against Billie Osborne individually, and as administrator of the estate of his wife, by the widows of L. Yates Moore and Boyd Moore and by Humphreys. Judgments were recovered in the amount of $58,000. This present suit seeks payment from the defendant under the insurance policy in order to satisfy the judgments recovered in Tennessee.

In answer to the plaintiffs' complaint that the defendant refused to defend under the policy provisions specifically providing therefor, the defendant alleged that there were fraudulent or material misrepresentations made in the application for insurance by Billie Osborne;[1] that such answers were material to the risk; that defendant relied on said answers in issuing the insurance policy; and that had it known the truth to these answers, it would not have issued the policy. The plaintiffs' reply set out the contentions that the defendant was estopped from relying on the insurance application since the clerk that was working for defendant's agent filled in the answers to the questions for the applicant Billie Osborne and failed to ask him for his answers to the pertinent questions in the application.[2] The defendant filed a motion for summary judgment.

The District Court relied on a case dealing with the issuance of life insurance based on misrepresentations in the application concerning an illness of the applicant. There, the Kentucky Court of Appeals (Mills v. Reserve Life Ins. Co., 335 S.W.2d 955 (1960)) sustained the granting of the insurance company's motion for summary judgment even though the applicant averred that he was illiterate and unable to read the application, and further that the agent failed to ask him any questions concerning illnesses when the application was being filled out. Under the *Mills* decision the applicable law of Kentucky was that the applicant had a duty to read the information on the application, whether he filled it out or not, and was responsible for the truthfulness of that information. In regard to the materiality of false answers, the Court said:

"[A] false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of *life insurance companies* under similar circumstances, would not have accepted the application if the substantial truth had been stated therein. See John Hancock Mutual Life Ins. Co. v. DeWitt, 259 Ky. 220, 82 S.W.2d 317; Chamberlain v. National Life & Accident Ins. Co., 256 Ky. 548, 76 S.W.2d 628, and Sovereign Camp, W. O. W. v. McDaniel, 251 Ky. 212, 64 S.W.2d 581." 335 S.W.2d at 958. (Emphasis supplied.)

The District Court granted defendant's motion for summary judgment when it found that the answers to the questions in Osborne's application were misrepresentations (a fact admitted by the plaintiffs); that the disputed testimony as to whether defendant's agent asked Osborne the questions was immaterial since Osborne signed the application; that the misrepresentations were material to the risk; and that had the defendant known the truth, it would not have accepted the risk. There was no finding that the misrepresentations were fraudulently made.

■ In considering the present case, we recognize that under the Erie doctrine (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) the substantive law of Kentucky controls in this diversity case.

---

1. The questions and answers found in Billie Osborne's application are:
   "(1) Has any driver had automobile insurance declined or cancelled? No.
   "(2) Has any driver been arrested for any reason or had his driver's license revoked, suspended or restricted? No.
   "(3) Has any user been involved in an accident (as a driver) in the past three years? No."

2. The undisputed facts are that Allstate Insurance Company refused to sell automobile insurance to Billie Osborne; that Osborne was convicted of drunk driving in 1954 and his license was revoked for six months; that his license was revoked in 1957 for six months for failure to maintain proof of financial responsibility; that in 1959, he pleaded guilty to a reckless driving charge; that in 1963, he was found guilty of having alcoholic beverages for the purpose of sale in a dry county; and that Osborne's wife, Shirley, had been in an accident shortly before Osborne made application for insurance.

After the District Court disposition of the case based on Mills v. Reserve Life Ins. Co., the Kentucky Appeals Court has had an opportunity to review the law in the area of fraudulent or material misrepresentations in the application for life insurance. In the cases after *Mills* (Kentucky Central Life Ins. Co. v. Combs, 432 S.W.2d 415 (Ky.1968) and Paxton v. Lincoln Income Life Ins. Co., 433 S.W.2d 636 (Ky.1968)), the Kentucky court had before it cases dealing with life insurance applications. *Combs* and *Paxton* reaffirmed the position of *Mills* and set out a new rule in regard to the person responsible for seeing that the correct information is in the application (as between the applicant and the agent for the insurance company). The Court in *Paxton* stated:

> "[T]he rule is that as between the applicant and the insurance company it is the applicant's responsibility to see that the application is correctly filled out." 433 S.W.2d at 638.

Since *Mills, Combs* and *Paxton* dealt with life insurance applications, the law of Kentucky is clear as to the situation created by misrepresentation in a life insurance application. This left open the question of whether this rule applied to all types of insurance applications. Then, on March 25, 1969, the Kentucky Court of Appeals, in Pennsylvania Life Ins. Co. v. McReynolds, 440 S.W.2d 275, considered a case dealing with misrepre-sentations in the application for non-medical accident and health insurance policies. There, the Court stated that the life insurance rule pertaining to mis-representations in the application was not applicable to the applications for non-life insurance policies. The Court sought to balance the interests of the in-surance company in getting true state-ments concerning the risk to be covered with the need of protecting the honest applicant against the "evil incidents of sales methods" employed by the insur-ance agents. The Court stated:

> "This problem is peculiarly acute, we believe, in the field of nonmedical health and accident insurance where the carrier waives its power to require a medical examination of an appli-cant before issuing a policy and in-stead relies on the fidelity of its agents and the honesty of the appli-cant for its protection against undue risks.

> "In order to effect a better balance between the interests and responsibili-ties of the carrier and the applicant in the field of nonmedical health and ac-cident insurance, *we no longer will place the full responsibility on the ap-plicant as stated in Ky. Central Life Ins. Co. v. Combs, supra, to see that the application is correctly filled out* except where the applicant, or his agent, inserts the answers on the ap-plication form signed by or for him. Of course if the applicant *knows* that false answers are being put down he will be responsible for them. Howev-er, his knowledge of the falsity may depend on how fully he understands exactly what information the applica-tion questions seek." 440 S.W.2d at 279. (Emphasis supplied.)

In *McReynolds*, the applicant made a full disclosure to the agent who consid-ered the answers too inconsequential to report on the application form. There, the Court stated that the question was whether there was in fact any misrepre-sentation in these circumstances, and that if the jury found that the applicant acted in good faith, then there was no material or fraudulent misrepresenta-tion. Here, plaintiffs contend that Os-borne was not asked to supply the an-swers on the application and that the de-fendant's agent filled in the answers for him. In this connection, plaintiffs sup-port their position by showing that de-fendant's agent in Murray, Kentucky, was writing policies for bad risks and that as a result of that agent's high loss ratio, defendant cancelled the agency contract on December 31, 1963.

We find that the question here is whether there was in fact any misrep-

resentation in these circumstances. The District Court found that the disputed testimony as to whether defendant's agent asked Osborne the questions was immaterial, but we in the light of *McReynolds* find this factor to be material and a factual question for the jury. The applicant's good faith is also a question for the jury, since the court in *McReynolds* stated that "the issue of good faith should be tried." 440 S.W.2d at 279.

While not necessary to the result we reach in the present case, it is to be noted that a reasonable extension of the rationale of *McReynolds* moves logically into the area of the automobile coverages. *McReynolds* seeks in terms to achieve a "better balance" between the rights of the insured and of the carrier when the latter chooses to forego medical examination requirements and makes a distinction between cases involving misrepresentations in life and nonmedical accident and health policy applications. Even more compelling reasons dictate the propriety of drawing a distinction between misrepresentations in life insurance and automobile liability insurance applications, since in the latter the public interest is involved (since any member of the public may suffer injury), whereas in the former only the rights of the beneficiary are at issue.

██ Plaintiffs also contend that the District Court erred in denying their request under Rule 34, F.R.Civ.P. for the production of certain correspondence between the defendant and one of its agencies pertaining to the policy of Billie Osborne. We find that the District Court did not abuse its discretion in denying those parts of the plaintiffs' motion for the production of documents.

The judgment of the District Court is vacated and the case remanded for further proceedings consistent with this opinion.