**Vera PAXTON, Appellant,**

v.

**LINCOLN INCOME LIFE INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 1, 1968.

Morris Butler, Greensburg, for appellant.

Fred Faulkner, Jr., Faulkner & Bertram, Campbellsville, for appellee.

PALMORE, Judge.

This is an action on two insurance policies issued by appellee, Lincoln Income Life Insurance Company, on the life of Willard Paxton, who died on December 12, 1965, from acute cerebral thrombosis. The policies were non-medical life policies in the amount of $1,000 each and were purchased on November 16, 1964 and December 6, 1965, respectively. Appellant, Vera Paxton, wife of the insured, was designated as beneficiary in both. Her suit on the policies resulted in a judgment n. o. v. for the insurance company, following which this court sustained her motion for an appeal. We affirm the judgment.

The policies were issued without medical examination. They are identical in form and contain the following pertinent provisions:

"Consideration—This contract is made in consideration of the delivery of this policy during the lifetime and good health of the insured and the payment of the premium stipulated herein on or before every Monday during the continuance thereof, or until twenty full year's premiums have been paid."

*Limitation on Agent's Authority.* Alterations and waivers—"No agent, or other person, other than the president or secretary of the company, is authorized to make or discharge contracts, or to alter, change, modify or waive any of the terms and conditions of this policy or any endorsement hereon, or to waive any forfeiture of this policy, or to extend the time for the payment of any premium or other moneys due the company by making any statement or promise not contained in this policy. No such change, alteration, modification, waiver election, extension, statement or promise shall be valid unless it is made in writing

and signed by one of the aforesaid officers of the company. No notice to or knowledge of any agent or medical examiner, or other person, whenever given or acquired, shall operate as a waiver of any forfeiture of this policy or of any of its terms and conditions or any breach thereof, whenever occurring, or preclude the company from relying on any such forfeiture, terms and conditions or breach; nor shall any person have power to bind the company by making any representation or receiving any information. The acceptance of this policy is taken as evidence by the company that it has been applied for, read, understood, and accepted in good faith."

Each policy provided that after two years from issuance it would be incontestable except for nonpayment and except as to double, triple and disability benefits.

It is undisputed that at the time of the issuance of the policies the insured was suffering from a heart condition for which he had been treated at intervals since September 13, 1963.

In the applications for the insurance the information as to physical condition was completely supplied to the soliciting agent by the insured's wife. She also signed the name of insured on the applications. Among others, the following questions and answers were contained in the applications:

"Item 17: Is the proposed insured now in good health?

A. Yes.

Item 20: When was the proposed insured last treated by a doctor, or hospital confined?

(No information was provided. On the second application the word "None" was inserted.)

Item 24: Does the insured have, or has proposed insured ever had any of the following: If so circle the specific item and explain in remark section.

A. (Diseases of the heart not circled. The word "No" inserted.)

Item 33: Have you personally read all the questions on this application and found them to be answered correctly?

A. Yes.

Item 34: Do you understand that the agent has no authority to waive or change policy requirements?

A. Yes."

The applications included the following statement printed above the space marked for signature:

"It is my complete understanding that the issuance of this policy is dependent upon the statements contained herein being accurate and complete to the best of my knowledge. It is also my understanding that the policy shall not take effect unless and until it is delivered to the applicant and the first premium is paid during the insured's good health. In the event any questions arise concerning the issuance of the policy, I hereby authorize all information be furnished to the Lincoln Income Life Insurance Company by any physician or hospital that may have knowledge pertinent to the underwriting or issuance of said policy."

Mrs. Paxton testified that her husband was not present on either of the occasions when she applied for the insurance but that he knew she was going to do so and she was authorized to sign his name to the applications. She said that when she applied for the first policy she told the insurance agent "about his heart condition and—he stated he would write it on the application and he wasn't sure it would go through but if it did he had two years waiting period and if it was his heart or anything else except his heart it would pay off." Afterward, according to Mrs. Paxton, when the agent brought her the policy, "He said it went through and on anything except his heart it would pay off, but that

**638**

he got a two year waiting period on his heart."

In December of 1965, when the second application was signed, Mr. Paxton, the insured, was in bed at home suffering from "a spell with his heart" while the transaction between Mrs. Paxton and the insurance agents took place in the living room. She says "they knew he was in bed with his heart and I was going back and forth to see about him." She testified that on this occasion she signed the application form in blank.

Mrs. Paxton's testimony was corroborated by her daughter, Peggy Jo Adkins. It was denied by the insurance agents. Mrs. Paxton had a seventh-grade education and is able to read and write.

■ Assuming the absolute truth of Mrs. Paxton's testimony, the case is nevertheless indistinguishable in principle from Mills v. Reserve Life Insurance Company, Ky., 335 S.W.2d 955 (1960), which a majority of the court is disinclined to overrule. See Kentucky Central Life Ins. Co. v. Combs, Ky., 432 S.W.2d 415 (decided April 26, 1968). Simply stated, the rule is that as between the applicant and the insurance company it is the applicant's responsibility to see that the application is correctly filled out.

In Lincoln Income Life Ins. Co. v. Burchfield, Ky., 394 S.W.2d 468 (1965), the insurance company itself, as distinguished from the agent who took the application, had ample notice of the applicant's condition and was not in a position to contend that the policy had been issued in reliance on the application. That is not so in this case. Wabash Life Ins. Co. v. Grace, Ky., 334 S.W.2d 922 (1960), a *per curiam* opinion in which the facts are not stated, is simply inconsistent with the line of decisions exemplified by the later case of Mills v. Reserve Life Ins. Co., Ky., 335 S. W.2d 955 (1960), and is overruled.

■ KRS 304.654(3) provides in effect that an insurance company must bear the responsibility for alterations unlawfully made by its agent on an application. It seems to us that the purpose of that statute is to protect an applicant who has fully performed his initial responsibility of seeing to it that the application has been completed correctly. But when the applicant merely has failed to read an incorrect application, or has overlooked errors in it, or has signed it in blank, he is not in a position to claim it has been "altered."

The judgment is affirmed.

MONTGOMERY, C. J., and EDWARD P. HILL, MILLIKEN, STEINFELD and WILLIAMS, JJ., concur.